THE PRESIDENT, MANAGERS AND COMPANY OF THE DELAWARE AND HUDSON CANAL COMPANY, Appellants and Respondents, *v.* THE PENNSYLVANIA COAL COMPANY, Appellant and Respondent.

The rule that an agreement to arbitrate is not sufficient to oust a court of law or equity of jurisdiction, is a departure from the general principle that effect should be given to contracts when lawful in themselves according to their terms and the intent of the parties, and it will not be extended or applied to new cases not coming within the letter and spirit of the decisions already made.

Where by the same agreement which creates a liability, and gives a right, it is made a condition precedent to a right of action thereon, either in express terms or by necessary implication, that certain facts shall be determined or amounts and values ascertained by arbitrators in case the parties cannot agree thereon; in case of such disagreement, and in the absence of fraud there is no cause of action, under the agreement, either at law or in equity, until the award is made as provided.

(The authorities upon the question of the binding force of agreements to arbitrate, collated and discussed.)

By an agreement between the parties, upon the completion of a contemplated enlargement of plaintiff's canal, defendant covenanted to pay additional toll, the amount of which was to be arrived at by ascertaining or estimating the cost of transportation before the enlargement, and also such cost after the enlargement, and one-half of such portion of the reduction as should be estimated to have been produced solely by the enlargement should be the additional toll thereafter to be charged; and in cases of disagreement between the parties as to the amount of reduction, and the portion thereof produced by the enlargement, the same should be determined by arbitrators.

In an action to recover additional toll, and to fix the amount thereafter to be charged,—*Held*, 1st. That the right of plaintiff to demand and the obligation of defendant to pay additional toll was restricted to the rate to be established pursuant to the agreement, and, until thus ascertained and established, defendant could not be put in default and plaintiff had no cause of action. 2d. That to found a claim for additional toll it must be made to appear that the actual cost of transportation was reduced after enlargement, and as the cost before and after was capable of being and was of such a character, that it was esssential it should be certainly ascertained, not conjectured, the contract required it should be so ascertained, from the best and most reliable data, and not determined by the judgments or opinions of parties or arbitrators without such data; also that the words " actual cost," meant the actual expenditure or outlay by the companies in the transportation of coal, as the business had been ordinarily conducted by them.

(Argued June 19, 1872; decided November 12, 1872.)

This case comes up on cross-appeals by the respective parties from a judgment of the General Term of the Supreme Court in the third judicial district, affirming a judgment in favor of the plaintiffs, entered upon the report of a referee.

The action was brought to recover a sum alleged to be due from the defendant for additional toll, chargeable and collectible upon coal of the defendant transported over the plaintiffs' canal, after it had been enlarged, and to fix a permanent toll, to be charged and collected upon all of the defendant's coal transported after such enlargement.

The controversy arises out of a contract made between the plaintiffs and the Wyoming Coal Association, dated August 31, 1847, the defendant having by contract assumed and become

possessed of all the rights and liabilities of the association under such contract. The provisions material to the present controversy are in substance as follows: The plaintiffs agreed to allow the association to use their canal, as it then was, for the purpose of transporting coal from where it should enter the same to tide-water, near the mouth of the Rondout creek, on the Hudson river, charging and collecting therefor a toll of so much per ton.

The amount of this toll for each year was to be fixed on the first day of May, and to be one-half of the surplus of the average selling price per ton of the coal (assuming for a standard of price the Canal Company's contracts made up to May first, for sale of their coal to arrive by canal during the year), after deducting from such selling price the fixed sum of two dollars and fifty cents per ton, which sum was assumed by both parties as the cost to the coal company of the coal laid down at tide-water.

The controversy in this case arose under the provisions which relate to the additional and permanent toll which should be chargeable and collectible in case the canal should be enlarged, and which are in the following words:

"And in case of an enlargement of the said canal, the said president, managers and company, and their successors and assigns, may also charge and collect an additional toll on the coal transported, in pursuance of this agreement, at a rate per ton of 2,240 pounds, to be established after the completion of the said enlargement, in the manner following, viz.:

"The cost of transportation per ton on the said canal, between the point at which such coal shall enter the said canal and the point on the Rondout creek at which said canal meets tide-water, after the full effect of all the improvements previous to the said enlargement shall have been experienced, shall be fairly ascertained or estimated, the cost of transportation per ton on the said canal between those points, after the said enlargement shall have been completed, shall also be fairly ascertained or estimated, and one-half of such portion of the reduction in the cost of transportation per ton on the said canal between

those points, as shall be estimated to have been produced by the said enlargement and by no other cause, shall be the additional toll per ton, to be thereafter permanently charged.

"And if the managers of the said Delaware and Hudson Canal Company and the managers of the said the Wyoming Coal Association shall not be able to agree as to the just and proper amount of reduction on the cost of transportation per ton on the said canal between the aforesaid points, and as to the portion of such reduction which shall be produced by the said enlargement, the questions between them, in respect thereto, shall be submitted to two persons, one of whom shall be chosen by the managers of the said company, and the other of whom shall be chosen by the managers of the said association. And the persons so chosen shall, if themselves unable to agree, choose a third person, to whom also the said questions shall be submitted, and the decision made in writing and signed by those assenting thereto of the two persons first chosen, if they shall agree ; and if not, of a majority of the three persons chosen as aforesaid shall be final and obligatory on the parties hereto as to the question aforesaid."

The canal was afterward enlarged so as to admit the transit of boats carrying 125 tons, which was seventy-five tons more than the boats carried on the old canal. Having completed the enlargement the plaintiffs gave notice thereof to the defendant by letter dated 28th July, 1853, wherein they claimed that the enlargement had produced a saving in the cost of transportation of forty cents a ton ; and that, under the contract, they had a right to charge and collect twenty cents per ton as additional toll ; defendant claimed there was no deduction.

A lengthy correspondence thereupon ensued in reference to an arbitration by which it appears that, although arbitrators were chosen, yet they never had a meeting nor was there a submission of the matters to them.

The referee decided that the determination by arbitrators, in case the parties did not agree as provided for by the contract, was not, nor was the fixing the amount of the reduction,

either by concurrence of the parties or award of the parties, a condition precedent to plaintiffs' right to exact a payment of or to sue for such additional tolls. That the sums of freight actually paid by the Delaware and Hudson Canal Company, before and after the enlargement, did not furnish a proper standard for ascertaining or determining the actual cost of transportation. That the proper method was to determine, in respect to each period, the amount of a fair and reasonable freight, such as should be paid to the boatmen if they supplied the boat horses and crew; and a proper method of ascertaining such fair and reasonable freight was by inquiring into and determining, upon the evidence, the aggregate cost for the year or season of a boat, such as was used upon the canal prior to the enlargement, and one of a species used after the enlargement and adopted by the referee for the purposes of the estimate, embracing a proper allowance for the use and depreciation of the boat, the cost of wages and board of the necessary crew, the use and keep of the horses, and all other items which go to make up the cost of transportation, and then inquiring into and determining the number of trips each would make under ordinary circumstances, what quantity of coal each would carry, and to divide the aggregate expense by the number of tons each would carry during the season, and thus fix the cost per ton. Upon these bases, without allowing to plaintiffs the benefit by way of increase of toll, of the general advance of prices of material and labor after the enlargement, to which he held the plaintiffs not entitled, the referee found the reduction to be ten cents per ton. He therefore fixed the amount of additional toll, to which plaintiffs were entitled, at five cents per ton. He further found that the reduction, applying the same measure of prices after the enlargement as before, was fifteen and thirty-nine one hundredths cents per ton; and if plaintiffs were entitled to have the reduction thus estimated, that the additional toll should be seven and sixty-nine one hundredths cents per ton.

It appeared upon the trial that the business of coal transportation upon the canal had always been done by

employing boatmen who purchased their boats of the companies, paying by installments reserved out of each trip. Each boatman run his boat, paying all expenses and carried coal at a freight of so much per ton. It also appeared that the sum paid per ton, after the enlargement, was in fact more than before.

Plaintiffs appealed from so much of the judgment as omitted to allow them the amount of additional toll resulting from the rise in prices. Defendant appealed from the whole judgment.

*Amasa J. Parker, John H. Reynolds* and *Stephen P. Nash* for the plaintiffs. Plaintiffs are entitled to maintain this action and to have the reduction in the cost of transportation determined by this court instead of by arbitration. (*Kill* v. *Hollister*, 1 Wils., 129 ; *Thompson* v. *Charnoch*, 8 Term., 139 ; *Scott* v. *Avery*, 4 House of Lords Cases, 811 ; *Horton* v. *Sayer*, 4 Hurls. & Norman, 642 ; *Smith* v. *Compton*, 20 Barb., 262 ; *Gray* v. *Wilson*, 4 Watts, 39 ; *Haggart* v. *Morgan*, 1 Seld., 422 ; *Greason* v. *Keteltas*, 17 N. Y., 491.) The clause in reference to arbitration does not fall within the cases where it is held to be a condition precedent. (*Buller* v. *Tucker*, 24 Wend., 477 ; *Smith* v. *Brady*, 17 N. Y., 173 ; *McMahon* v. *Erie R. R. Co.*, 20 id., 463 ; *Smith* v. *Deiggs*, 3 Denio, 73 ; *Thurwell* v. *Balberino*, 2 Mees. & Welsb., 786 ; *Scott* v. *Avery*, 5 House of Lords Cases, 811 ; the same case being reported also in 20 E. L. & E., 327 ; 8 Ech., 487, 497 ; 22 Law Jour. [N. S.], 187 ; 17 Jurist., 916 ; referee's opinion, fol. 936.) Even if there was a submission it was revocable. (*Smith* v. *Crompton*, 20 Barb., 262 ; *Peters* v. *Craig*, 6 Dana [Ky.], 307.) The contract does not prescribe the form of remedy for collecting the toll, nor forbid a resort to an action. (*Jordan* v. *Morley*, 23 N. Y., 552 ; *Penn. Coal Co.* v. *Del. and Hud. Canal Co.*, 1 Keyes, 79 ; *Howell* v. *Young*, 5 B. & C., 258 ; *Wilcox* v. *Plumer*, 4 Peters, 172, 182 ; *Angel* v. *Bryant*, 1 Sandf. [S. C.], 78 ; 11 Ad. & El., 301 ; 18 Vermont, 252 ; Sedgwick on Damages, 102, 103, 109.) Plaintiffs are not estopped from proving the cost

of transportation on the old canal as more than found by the referee. (*Dezell* v. *Odell*, 3 Hill, 222.) In the construction of a contract, preliminary negotiations are merged in the ultimate contract. (*Renard* v. *Sampson*, 2 Duer, 285; affirmed, 2 Kern., 561; *Whitbeck* v. *Waine*, 16 N. Y., 532; *Matter of Bonaffe*, 23 id., 169, 185.) In construing an ambiguous contract, the acts of the parties under it, and the circumstances under which it was made, are sometimes received in evidence. (*Curtiss* v. *Howell*, 39 N. Y., 211; *French* v. *Carhart*, 1 Comst., 96; *Railroad Co.* v. *Trimble*, 10 Wall., 367.) Any agreement which has for its object to oust the courts of their jurisdiction over the rights of parties, is void. (*Hurst* v. *Litchfield*, 39 N. Y., 377; *Greason* v. *Keteltas*, 17 N. Y., 491; *Scott* v. *Avery*, 5 H. L. Cas., 811; 36 Eng. L. & Eq., 1; *Scott* v. *Corp. of Liverpool*, 3 De G. & J., 334.) Defendant was liable to pay the further toll as soon as the enlargement was completed. (*The Jordan, etc., Co.* v. *Morley*, 23 N. Y., 552; *Penn. Coal Co.* v. *Del. and Hud. Canal Co.*, 1 Keyes, 72, 79.)

*Charles F. Southmayd* and *Lyman Tremain* for the defendant. The principle that an agreement to arbitrate is a bar to an action is not applicable to this case. (*Smith* v. *Brady*, 17 N. Y., 173; *McMahon* v. *N. Y. and Erie R. R. Co.*, 20 id., 463; *Smith* v. *Briggs*, 3 Denio, 73; *United States* v. *Robson*, 9 Peters, 309; *Butler* v. *Tucker*, 24 Wend., 447; *Scott* v. *Avery*, 5 House of Lords Cas., 811; *Brown* v. *Overbury*, 11 Exch. R., 715; *Milnes* v. *Gery*, 14 Ves., 400; *Thurnell* v. *Balberino*, 2 Mees. & Welsb., 786; *Scott* v. *Corporation of Liverpool*, 3 De Gex & Jones, 334; 2 Story's Eq. Jur., § 1457 a.) A submission of a pending suit to arbitration is a defence, and suspends the right of action. (*Camp* v. *Root*, 18 Johns., 22; *Ex parte Wright*, 6 Cowen, 399; *People* v. *Onondaga*, C. P., 1 Wend., 314; 2 id., 505; *Town* v. *Wilcox*, 12 id., 503; *Green* v. *Patchin*, 13 id., 293; *Wells* v. *Lain*, 15 id., 99; *Dedrick's Adm'r* v. *Richley*, 19 id., 108; *Coleman* v. *Wade*, 2 Selden, 44, 49; *Webb* v. *Rice*,

1 Hill, 610; *Blunt* v. *Whitney*, 3 Sandf., 4; *Jordan* v. *Hyatt*, 3 Barb., 275; *Ressequie* v. *Brownson*, 4 id., 541; *Smith* v. *Compton*, 20 id., 262; *Grosvenor* v. *Hunt*, 11 How., 355; *Bank* v. *Wednor*, 11 Paige, 529, 533; *Brazill* v. *Isham*, 2 Kern., 9; *James* v. *Patten*, 6 N. Y., 9.) The commencement of this suit is no revocation of the submission. (*Van Antwerp* v. *Stewart*, 8 I. R., 125; *Lattey* v. *Tyrill*, 10 Vt., 91; Caldwell on Arbitration, 70.) No particular form of words is necessary to make a submission complete, and an agreement to abide by the award is implied in the submission. (*Stuart* v. *Cox*, 16 Vt., 633; 2 Porter Ch., 430; *Harrison* v. *Wright*, 13 Mason, 816.) An express covenant in a deed takes away all implied covenants, and in such case there can be no resort to an implied contract. (*Loomis* v. *Hall*, 15 Pick., 169; *Zule* v. *Zule*, 24 Wisc., 76; *Vanauken* v. *Vanauken*, 11 Johns. Ch., 122; *Gates* v. *Caldwell*, 7 Mass., 68; *Sumner* v. *Williams*, 8 id., 201.) A contract cannot rest partly in writing and partly in parol. (*Parkhurst* v. *Van Cortlandt*, 1 Johns. Ch., 273; *Norton* v. *Woodruff*, 2 Comst., 153.) The ascertainment of the amount of the defendant's liability by arbitration is a condition precedent of the defendant's obligation of payment. (*Horton* v. *Sayer*, 4 Hurlst. & Nor., 642, op. p. 651; *Scott* v. *Avery*, 5 H. of L. Cas., 811, opinion Ld. Chan. Cranworth; *Milnes* v. *Gery*, 14 Ves., 140, opinion of Master of the Rolls; Story's Eq. Jur., § 29, pp. 261, 716, 717; Williard's Eq. Jur., 490; *Brown* v. *Smith*, 10 Paige, 200; *Walrath* v. *Handy*, 24 How., 353; Code, § 148; *Hatch* v. *Cook*, 4 J. Ch. R., 559; *Kempshall* v. *Stone*, 5 id., 193; *Morse* v. *Elmandorf*, 11 Paige, 277; *Lynch* v. *Williard*, 6 J. Ch. R., 342.) Plaintiffs could only be relieved from the performance of such condition precedent by absolute refusal to proceed with the arbitration, or such misconduct as would amount to a fraudulent evasion of it on the part of defendant. (*Scott* v. *Corporation of Liverpool*, 3 De Gex & Jones, 334; 2 Story's Eq. Jur., § 1457 *a*.) The referee's finding as to cost of transportation is contrary to the evidence, and is error of law. (*Putnam* v.

*Hubbell*, 42 N. Y., 106; *Austin* v. *N. J. Steamboat Co.*, 43 id., 75.)

Allen, J.   It appears to be well settled by authority that an agreement to refer all matters of difference or dispute that may arise to arbitration, will not oust a court of law or equity of jurisdiction.   The reason of the rule is by some traced to the jealousy of the courts, and a desire to repress all attempts to encroach on the exclusiveness of their jurisdiction; and by others to an aversion of the courts, from reasons of public policy, to sanction contracts by which the protection which the law affords the individual citizens is renounced.   An agreement of this character induced by fraud, or overreaching, or entered into unadvisedly through ignorance, folly or undue pressure, might well be refused a specific performance, or disregarded when set up as a defence to an action.

But when the parties stand upon an equal footing, and intelligently and deliberately, in making their executory contracts, provide for an amicable adjustment of any difference that may arise, either by arbitration or otherwise, it is not easy to assign at this day any good reason why the contract should not stand, and the parties made to abide by it, and the judgment of the tribunal of their choice.   Were the question *res nova*, I apprehend that a party would not now be permitted, in the absence of fraud or some peculiar circumstances entitling him to relief, to repudiate his agreement to submit to arbitration, and seek a remedy at law, when his adversary had not refused to arbitrate, or in any way obstructed or hindered the arbitration agreed upon.   But the rule that a general covenant to submit any differences that may arise in the performance of a contract, or under an executory agreement, is a nullity, is too well established to be now questioned; and the decision of the appeal of the present defendant does not make it necessary to inquire into the reasons of the rule, or question its existence.   The better way, doubtless, is to give effect to contracts, when lawful in them-

selves, according to their terms and the intent of the parties; and any departure from this principle is an anomaly in the law, not to be extended or applied to new cases unless they come within the letter and spirit of the decisions already made. The tendency of the more recent decisions is to narrow rather than enlarge the operation and effect of prior decisions, limiting the power of contracting parties to provide a tribunal for the adjustment of possible differences, without a resort to courts of law; and the rule is essentially modified and qualified.

The agreement, which is the subject-matter of litigation in this action, was carefully prepared by astute counsel, and the contracting parties themselves were intelligent, shrewd and practical business men of large experience; and no injustice, therefore, will be done to either by interpreting the instrument, and every part of it, by the ordinary rules for the interpretation of written instruments. It may be assumed that every provision which was essential to protect the interests of either, and give effect to the actual intention of both was inserted in words well chosen to give clear and distinct expression to the views of the parties, and exclude every construction inconsistent with such intention or the agreement as actually made.

The plaintiffs, under the agreement, secured to themselves the right to certain tolls absolutely for the use of their canal, to be ascertained from year to year in the manner and by the rules prescribed. Although they were not fixed and certain in amount, they were capable of being ascertained and made certain. An enlargement of the canal was contemplated, which it was supposed would inure to the benefit of the defendant by reducing the actual cost of transportation, and entitle the plaintiffs, under the arrangement and the terms of the agreement, to additional toll. But the amount of the toll to which the plaintiffs should be entitled, in addition to the toll as agreed upon, could not then be determined; and hence a provision was necessary for the ascertainment and adjustment of this additional toll when the right to it should

accrue. The parts of the agreement relating to this additional toll are separate and independent of every other part of the instrument, and are complete and perfect by themselves as an agreement by which the plaintiffs should be entitled, in the contingency named, to charge and collect the contemplated additional toll. Every part of the agreement, as to this additional toll, should be read as one instrument and one agreement. No part of it is collateral to and independent of any other part of it, and effect cannot be given to any one provision or paragraph, except in reference to and as modified by the other parts of the agreement relating to the same subject-matter. This is a leading canon in the interpretation of all covenants and written instruments.

The plaintiffs were secured the right to " charge and collect" toll on the defendant's coal; and it may be conceded the defendant undertook to pay, in addition to the toll before then chargeable, at a rate *to be established* after the canal enlargement should be completed in the manner particularly prescribed, and an arbitration was the final resort agreed upon to establish the rate and amount of toll, in case the contracting parties should not be able to agree, and the decision of the arbitrators was to be final in the premises. Both parties were to be concluded by it as to the amount or rate of toll which the one might exact and the other be compelled to pay. The manner by which the rate of toll was to be established was by the agreement of the parties, or, that failing, by arbitration. No other mode or manner was thought of or prescribed; and this manner being prescribed necessarily excludes every other method, as clearly and effectually as if the parties had said in terms that the rate should not be established by a resort to the courts or in any other manner, except by the parties, or, in case of their disagreement, by disinterested persons to be chosen for that purpose. *Expressio unius est exclusio alterius.* The parties have agreed to a rate " to be established in manner following;" and it would have added nothing to the legal effect to have added in terms that it should not be otherwise established, and excluded in

words the interposition of the courts. It is true the data from which and the rule and method of computation and calculation by which the additional rate was to be ascertained and adjusted is prescribed for the government of the parties, or those who, in their stead and as arbitrators or umpires, should act under this part of the agreement. That is, doubtless, a part of the process or formula for establishing the additional rate; but that alone did not and could not determine the rate. Action was to be had by the agents provided for, in conformity to and under the prescribed rule, and the *manner* of establishing the additional rate of toll was by the selection of the arbitrators, and their proceeding to ascertain the facts, and make the necessary estimates and the resulting calculations and computations.

Should the "manner following" receive a more restricted interpretation, and be regarded as strictly and literally referring to the rule given for estimating or ascertaining the reduction in the cost of transportation produced by the enlargement, and by no other cause, the fact still remains that the right of the plaintiffs is only to an additional rate of toll "to be established;" and the agreement prescribes the rule and designates the means and agency by which the additional toll is to be computed and estimated, and thus "established." The right of the plaintiffs to demand, and the obligation of the defendant to pay additional toll is restricted to the rate to be established pursuant to the agreement. The extent of the duty and the right were to be measured by the judgment and decision of the arbitrators, and not otherwise. The clear and plain intent of the parties was that the additional rate of toll should "be established," as preliminary to the right of the plaintiffs to charge and collect, and a formula was given by which it was contemplated that the parties would be able to agree upon the rate to be paid; but they also provided for the contingency of a disagreement in respect to the principal facts and estimates, upon the basis of which the additional toll was to be computed and established, and which, being ascertained, the rate of toll would be arrived at

by a simple arithmetical computation. The process by which the additional rate of toll was to be established was by ascertaining or estimating the cost of transportation prior to the enlargement, and the cost of transportation after the enlargement, and the amount of the reduction which should be produced by the enlargement, and by no other cause; and the one-half of the latter sum was agreed upon as the additional toll to be "thereafter permanently charged." If the managers should not be able to agree as to the amount of the reduction in the cost of transportation, and in the portion of such reduction which should be produced by the said enlargement, "the questions between them in respect thereto" were to be submitted to arbitration. Now while it is true that the parties have not in *totidem verbis* agreed that the additional rate of toll to be exacted shall be established by arbitrators, they have, in substance and effect, done so, by providing that in case of difference between the contracting parties the arbitrators shall determine and establish an amount, which, divided by two, will give the additional rate of toll intended to be established.

The amount of reduction produced solely by the enlargement of the canal was to be determined by arbitration, and the parties agreed that the one-half of that sum should be the additional rate. This was, in substance and effect, a provision for establishing the rate of toll to be charged and collected, in case of a difference between the parties, and equivalent to an agreement in words that, in case the parties should differ, arbitrators should be chosen who should, by the rules and formula prescribed, establish and determine the rate of additional toll, and that their award should be final. The subject-matter in view was peculiarly fit and proper for submission to the arbitrament of experts and practical business men rather than courts and juries; and the manner agreed upon was a provident and reasonable provision for the adjustment of rights and differences, which, in their nature, could not be as well or satisfactorily settled and determined in any other way. The relation of the parties to each other

and the character and extent of the business contemplated under the contract called for an amicable and speedy adjustment of the rate of toll, and the charges which should be imposed upon the property of one for the benefit of the other. Neither party contemplated the possibility of, or would have agreed to a rate of toll to be determined by a jury in an action which the plaintiffs might bring for the recovery of the toll upon the first cargo of coal that might pass through the canal after the enlargement. The right to the additional toll was given by the agreement, and could be enforced either by detention of the boat and cargo or by action; but the amount and measure of such additional toll was to be determined by arbitration, and as prescribed in the agreement.

The defendant only undertook to pay such rate of toll as should be established, as prescribed in the instrument, and cannot be compelled to acquiesce in the determination in any other manner, and until a rate is established, no liability is incurred under the contract or right of action given. This mode of adjustment and settlement of the rate is a part of the agreement for the additional toll, and modifies and qualifies the reservation of the right so that the right does not attach until the same is established. The determination and adjustment is a condition precedent to the right to demand and receive the toll, and no action will lie until the condition has been performed. Whether, when established, it would retroact and give a right to the additional toll from the time of the completion of the enlargement need not be considered. Neither need the effect of a refusal of the defendant to arbitrate nor any act on its part hindering and obstructing an arbitration be considered as the omission to arbitrate, and the failure to establish the additional rate of toll according to the terms of the agreement was not caused by the defendant. The plaintiffs seek without any valid reason, so far as appears by the case, to enforce the payment of an additional toll not established in the manner, and by the agents agreed upon, but by another tribunal. The defendant may well say that

is not the measure of liability to which it assented. Thus understood and interpreted, the case is not within the rule which nullifies contracts ousting the courts of their jurisdiction, but is within another rule equally well established by authority, and founded in good reason, that a person may covenant that no right of action shall accrue till a third person has determined any differences that may arise between the parties to the covenant or determined the measure of the liability of the covenantor, and the amount to which the covenantee shall be entitled.

The decisions of the courts of this state are to this effect, and are authoritative, and would be obligatory upon us even if they were not as well grounded in principle as they are. The principle was recognized by the chancellor and Senator Tracy in *Del. and Hud. Canal Co.* v. *Dubois* (15 W. R., 87), although not applied for the reason that the contract by which, among other things, it was referred to the engineer of the plaintiffs to estimate the amount and value of the work, and also to determine every other question necessary for the adjustment and final settlement of the contract, had been rescinded. In *Butler* v. *Duncan* (24 W. R., 447), the plaintiff had covenanted to do certain work to the satisfaction of third persons, and a declaration not averring that the work had been done to the satisfaction of the arbiters, was held bad on demurrer. To the same effect is *Smith* v. *Briggs* (3 Denio, 73), where the contract of the defendants was to pay the plaintiff, a builder, when he should receive the certificate of the architect that the work was finished according to the contract. *Smith* v. *Brady* (17 N. Y., 173) reaffirms the doctrine in a like case. A provision in a contract that the work under a contract with a railroad company should be executed under the direction of an engineer of the company, "by whose measurements and calculations the qualities and amounts of the several kinds of work performed" should be determined, and that his decision should be final, was held to be free of any legal objection, and obligatory upon the parties according to its terms. (*McMahon* v. *N. Y. & Erie R. R. Co.*, 20 N. Y.,

463.) The case at bar is not distinguishable in principle from those cited. It is not material whether the arbiters are to determine that a contract has been performed to their "satisfaction," or "according to the specifications annexed to the contract," or determine the quality of the work, and "measure and calculate the quantity and amount of the several kinds of work," or to compute and estimate the rate of toll to be paid, or the measure and value of any other thing, as a condition precedent to a right of action for either. The parties in this, as in the cases referred to, have agreed that the decision of the arbiters shall be final and obligatory.

*Hurst* v. *Litchfield* (39 N. Y., 377) was decided by the first paragraph in the opinion of the learned judge giving the judgment, and on the ground that the referee had found as a fact, which finding was conclusive on this court, that no question ever arose under the contract between the parties in relation to the value of the work, and that therefore there was nothing to submit under the submission claim. What is said, therefore, as to the validity of the clause is *obiter*, and can hardly be regarded as authoritative, or as the judgment of the court. Whether the determination of the amount and value of the work is a condition precedent to a right of action, depends entirely upon the interpretation of the whole contract. It may have been, in the case last cited, an independent covenant, and collateral to the other undertakings of the other parties. But the opinion is subject to the criticism, that its learned author does not discriminate between covenants ousting courts of their jurisdiction, and those merely providing for adjustments of certain disputes, or the ascertainment of values or quantities as preliminary to the existence of a cause of action, and a right to resort to the courts.

*Wood* v. *Lafayette* (46 N. Y, 484) was well decided, merely reaffirming, so far as the questions presented by this appeal are concerned, that the power of an arbitrator is revocable. That was the question also in *Smith* v. *Compton* (20 Barb., 262).

The agreement before the court in *Huggart* v. *Morgan* (1

Selden, 422) was that all disputes which should arise should be settled forthwith by arbitration, and therefore, if valid, would have ousted the courts of all jurisdiction, and within the settled rule, was held no bar to an action, the agreement to arbitrate only entitling the party to damages. These are all the cases from our own courts that need be referred to. The distinction between the two classes of cases is marked and well defined. In one class the parties undertake by an independent covenant or agreement to provide for an adjustment and settlement of all disputes and differences by arbitration, to the exclusion of the courts, and in the other they merely, by the same agreement which creates the liability and gives the right, qualify the right by providing that before a right of action shall accrue certain facts shall be determined or amounts and values ascertained, and this is made a condition precedent either in terms or by necessary implication.

This case is within the latter class, and the condition being lawful, the courts have never hesitated to give full effect to it. The cases of *Kill* v. *Hollister* (1 Wils., 129); *Thompson* v. *Charnock* (8 T. R., 139); *Horton* v. *Sawyer* (4 H. & N., 643); *Gray* v. *Wilson* (4 Watts., 39); *Mitchell* v. *Harris* ( 2 Vesey, 129); *Roper* v. *Landon* (1 Ellis, [Q. B.] 825), and the other cases cited and relied upon by the plaintiffs, belong to the first class, and involved the validity of covenants which deprived the parties of the protection of the courts and ousted the courts of all jurisdiction. In none is the rule as qualified by the other class of cases questioned, and in some it is referred to with approval. The reports abound in cases in which the principle has been affirmed and applied. (See *Herrick* v. *Belknap*, 27 Vermont, 673.) In *United States* v. *Robeson* (9 Peters, 319), it was held that when the parties in the contract fix on a certain mode by which the amount to be paid shall be ascertained, the party that seeks the enforcement of the agreement must show that he has done everything on his part which could be done to carry it into effect; that he cannot compel the payment of the amount claimed unless he shall procure the kind of evidence required by the contract,

or show that, by time or accident, he is unable to do so. Judge Story, in his work on Equity Jurisprudence, § 1457 *a*, thus states the rule: "But under a contract to pay the covenantee such damages in a certain contingency as a third person shall award, there is, in the absence of fraud, no cause of action either at law or in equity, unless the award is made," citing *Herrick* v. *Belknap* (*supra*), and *Scott* v. *Corporation of Liverpool* (3 De Gex & J., 334), as authorities. *Scott* v. *Liverpool* was the case of a contract for work, containing a provision for putting an end to the contract by the employer in a certain contingency, and that in such case they should pay the contractor such sum as the engineers should determine had been reasonably earned, and it was held that, in the absence of fraud or collusion, no action could be maintained, until after an award was made. Here the contract is to pay an additional rate of toll to be established by arbitrators to be chosen. And see *Brown* v. *Overbury* (11 Exch., 715).

*Scott* v. *Avery* (5 H. of Lords Cases, 811) is in principle on all fours with the case at bar, and, unless we are prepared to overrule or disregard it, is decisive. That was an action on policies of insurance, one of the conditions of which was that the sum to be paid for loss should, in the first instance, be ascertained by the committee, but if a difference arose between the insured and the committee, the difference was to be referred to arbitration in a way pointed out by the conditions, with a proviso that no one who refused to accept the amount settled by the committee, should be entitled to maintain an action at law or suit in equity on his policy until the matter had been decided by arbitration, and then only for such sum as the arbitrators should award. It was held that these conditions were lawful, and that till the award was made no action was maintainable. The House of Lords affirmed the judgment of the Court of Exchequer Chamber, reversing that of the Court of Exchequer. There, as in this case, in the language of Lord CAMPBELL. the rules and regulations for ascertaining the amount to be paid made part of the contract, and it is not material that there the contract was express that no

action should be brought until after the award, while in the contract before us it is implied. It is not necessary that it should be put in the technical form of a "condition precedent," and the courts will give effect to the real intention of the parties, as clearly indicated by the agreement. (See American note to *Braunstein* v. *Accidental Death Ins. Co.*, 1 Best & Smith, 101 Eng. Com. Law R., 783.) When, as here, the agreement is that the covenanter shall pay such sum, and only such sum, as shall be determined by arbitrators, the procuring an award is as clearly a condition precedent to an action, as if the parties had added, " and no action shall be maintainable until after the award of the arbitrators." Such a clause would be surplusage, and its insertion a work of supererogation. Mr. Justice CROWDER, in making response to the question propounded by the lords to the judges, in *Scott* v. *Avery*, thus states the question and the answer to it : " Can a shipowner and an insurer enter into a valid agreement that the shipowner shall pay down a given sum, and that in consideration of such payment the insurer upon the loss of a given ship shall pay to the said owner, not the amount of the loss sustained by her through the perils of the sea, but only such sum of money as shall be settled and ascertained by arbitration. I am not aware of any legal objection to such a contract, whatever may be thought of its prudence. And I think the effect of such a contract is, that no action lies for the breach of it, until the same has been ascertained by arbitration." The judge lays no stress upon the form of the contract, but regards the provision for determining the amount to be paid by arbitration as in legal effect postponing the right of action until after the award is made.

The lord chancellor (CRANWORTH), in assigning his reasons for an affirmance of the judgment of the Court of Exchequer Chamber, says : " That the meaning of the parties, therefore, was that the sum to be recovered should be only such sum as, if not agreed upon in the first instance between the committee and the suffering member, should be decided by arbitration, and no other, should be the sum to be recovered, appears

to me to be clear beyond all possibility of controversy.   And if that was their meaning, the circumstance that they have not stated that meaning in the clearest terms, or in the most artistic form, is a matter utterly immaterial.   What the court below had to do was to ascertain what was the meaning of the parties, as deduced from the language they have used."

The intention of the parties, as deducible from the contract, in his opinion was, " that the right of action should be not. for what a jury should say was the amount of the loss, but for what the persons designated in that particular form of agreement should so say."   Although the judges responding to the lords differed in opinion, there does not appear to have been any dissent from the judgment in the House of Lords by those taking part in the decision.   (*Braunstein* v. *Accidental Death Ins. Co., supra ; Tredman* v. *Holman,* 1 Hurls. & Colt., 72, followed *Scott* v. *Avery.*)   In Braunstein's case the policy did not, in terms, declare that the award of arbitrators should be a condition precedent to the bringing of an action. The condition was to the effect that, in case of difference of opinion as to the amount of compensation, the question should be referred to arbitration, and the award made should be taken as a full settlement of the question, and the legal effect was to prohibit an action until the amount was determined by the award.   The court held that the parties had used sufficient words to make the reference to arbitration a condition precedent.   The defendant has, in substance, covenanted to pay additional toll at such rate as should be established by the parties, or, in case of their disagreement, by arbitrators to be selected for that purpose, and neither party has agreed to acquiesce in a rate of toll to be established by any other tribunal.   As before suggested, while the arbitrators are not required, in terms, to halve the sum estimated as the reduction in the cost of transportation, produced solely by the enlargement of the canal, and in form award the quotient to be the additional rate of toll thereafter to be charged, it is declared and agreed that they shall ascertain and determine the reduction of the cost thus produced, and

that one-half of the reduction thus ascertained shall be the additional toll. In substance, therefore, the arbitrators are to establish the toll, *Id certum est quod certum reddi potest.* Every essential fact was to be settled by arbitration in case of a difference of opinion, and the award of the arbitrators would have been a substantial establishment of the additional rate of toll, and such was clearly the intent and meaning of the parties. It is the toll which should be established in this particular manner and none other that the plaintiffs are authorized to charge and collect either by distress or action; and this, and this only, is the toll which the defendant has undertaken to pay. The boats of the defendant could not be detained or its coal seized for the collection of the toll, without the amount was established, that is, ascertained and made certain. (*Penn. Coal Co.* v. *Del. & Hud. Canal Co.*, 40 N. Y., 72.) The defendant could not be put in default for non-payment of the toll until, in like manner, the amount payable was ascertained and established, and no action is maintainable until after default. When the right to the additional toll became perfect the plaintiffs had the right of distress or a right of action. The remedies were concurrent, and under the agreement the right was not perfect until the rate was established. The defendant had not agreed to pay a reasonable toll. Had that been the contract, a right of action might accrue, although the right of distress might not exist for want of certainty as to the amount payable. But the parties did not intend to leave the amount uncertain, and have agreed in what manner and by whom the amount should be determined, and the intent is clearly manifested from the terms used, and the construction of the contract to make the award a condition precedent to the right of action for the additional toll. This is an especially reasonable provision in this contract, as before suggested. And again, the defendant was not bound to send a ton of coal over the plaintiffs' canal, and it was right and proper therefore that the toll to be exacted and collected should be known, even in advance of its actual imposition, that they might elect whether to send coal to market by that

route. (*Hudson Canal Co.* v. *Penn. Coal Co.*, 8 Wallace, 276.)

There is another objection equally fatal to the plaintiffs' action. As it is elaborately considered by Judge PECKHAM in the court below, a very brief statement of it here is all that is necessary. In adjusting and establishing the rate of toll to be paid upon the coal transported upon the plaintiffs' canal, prior to the completion of the enlargement, the parties had in view and estimated the actual cost, to the defendant, of the mining and carrying its coal to its place of deposit at or near the terminus of the plaintiffs' canal on the Hudson river, and one-half of the difference between this amount and the price at which sales of coal were made to be ascertained as particularly prescribed from year to year, was agreed upon as the rate of toll prior to the enlargement. The toll to be paid to the plaintiffs was to be a specified portion of the price at which coal should be sold in excess of such cost. This was the profit upon the sale of the coal at Rondout which would be realized, estimating the actual cost of the coal laid down at that point at two dollars and fifty cents per ton. But in all the negotiations and estimates upon which the negotiations were based and the final agreement made, the parties had in view the actual cost to the defendant of placing its coal at Rondout.

The defendant was protected against loss under this arrangement, resulting from an increase in the cost of transportation, or other increase in its expenditures in the business, from any cause, by the fact that it was not under obligations to send a ton of coal over the canal. If, by reason of an increase in the price of labor, the cost of provisions or other cause it should find itself unable to lay its coal down at Rondout, at a cost of two dollars and fifty cents per ton, it could cease to send its coal under the agreement. If the language of the agreement were less explicit than it is, it would be a reasonable and almost necessary inference that the parties did not intend, in providing for a future provisional increase of toll, to depart from this safe and certain

basis of the actual cost of the transportation, which was one of the items entering into the cost to the defendant, of laying its coal down at tide water, and adopting the uncertain, visionary and chimerical basis which was adopted by the referee in this case; an estimate wanting every element of certainty, in every stage of its progress, and all the parts that went to make up the whole; an estimate that was little better than a conjecture, and leading to results unjust in the extreme to the defendant.

The direct effect of the rule of interpretation adopted by the referee, as carried out in his estimates and by his report, was to subvert the scheme of the contract and destroy the equitable rule by which the parties had agreed to participate in the proceeds of or profits upon the sale of the defendant's coal at tide-water, and give to the plaintiffs a portion not contemplated, and to cast upon the defendant the entire risk of a contingent or possible increase in the cost of the service to be rendered by it in the promotion of what may, under the circumstances, be regarded as somewhat in the nature of a joint adventure for the mutual benefit of each. It would require positive and explicit language, indicating clearly an intent thus to vary the relative position of the parties under the contract, to justify an interpretation which would accomplish such a result.

So far from the terms of the contract calling for such a construction, they do not, upon a fair and reasonable interpretation, admit of it. The words are well chosen to declare a very different meaning, and one more in harmony with the general purpose and intent of the parties. But little will be derived in seeking after the meaning of the parties by a recourse to the technical meaning of the words used. The facts to be arrived at in the process of establishing the additional tolls were capable of being certainly known; and they were of such a character that it was essential that they should be certainly known and not conjectured. Accuracy in the data for the fixing the additional toll was important to both parties; and it cannot be assumed that they intended to sub-

stitute opinion or conjecture for positive and certain evidence. The two facts to be ascertained were, first, the cost per ton of transportation before the enlargement; and, second, the cost of transportation after the enlargement. The cost of transportation at these two periods was to be "ascertained or estimated;" the same terms being employed as to each. As used, the words simply required the cost to be made certain, either by trial, examination or experiment, or by computation or calculation, that way in which, under the circumstances, the cost could be most certainly known. But whatever might be the process, the actual cost was the precise thing to be ascertained and known, and not the judgment or opinion of the parties, or of the arbitrators, as to what the coal might be transported for. That which was capable of being certainly ascertained was to be ascertained, and from the best and most reliable data. The portion of the reduction, or the actual cost, which should be produced solely by the enlargement of the canal, was not capable of being certainly ascertained, and, therefore, that was to be estimated; that is, determined by the best judgment of those competent to form an opinion. But before there could be occasion for an opinion or action, under this head of the agreement, a reduction in the actual cost of transportation must exist; and this is to be established by ascertaining the actual cost both before and after the enlargement.

The fact that there has been no reduction in the cost of transportation since the enlargement cannot affect the reading of the contract. The cost to be ascertained could not, in the nature of things, mean anything but the actual expenditure or outlay in the transportation. Before the enlargement was to be credited with any result, or to affect the tolls, the cost was to be reduced. Had not the parties intended that an actual reduction in the cost of transportation should be established as a condition precedent to the right to increased tolls, they would not have referred to the cost of transportation at either of the periods referred to, as such cost would have had no practical bearing upon the question to be determined, or

the rate of toll to be paid on account of the enlargement. The provision would have been much more simple, and would have required merely an estimate of the pecuniary benefit to the defendant of the enlargement; an estimate of the saving in expense to the carrier in the enlarged over the smaller canal. But that was not the view or intent of the parties when the contract was made. In the opinion of the court it is clearly deducible from the terms of the contract that the parties intended to entitle the plaintiffs to demand and collect additional tolls; that, first, the cost of transportation upon the canal should be actually reduced or diminished; and, second, that some part of such reduction should be produced by the enlargement and no other cause.

It is conceded that there has been in fact no reduction or diminution in the cost of transportation since the enlargement, but, on the contrary, the cost has largely increased. It follows that there is no foundation for any claim to additional toll under the contract.

The judgment must be reversed and a new trial granted, costs to abide event.

All concur, PECKHAM, J., not sitting.

GROVER, J., concurs on the second ground, without expressing an opinion on the ground first considered by ALLEN, J.

Judgment reversed.