UNITED STATES SUGAR REFINERY v. EDWARD P. ALLIS CO.

(Circuit Court of Appeals, Seventh Circuit. January 2, 1901.)

No. 701.

1. SALE—ACTION FOR PRICE OF MACHINERY—EFFECT OF PROVISION REQUIRING ACCEPTANCE OR ARBITRATION.

Plaintiff built and furnished certain steam dryers for defendant, and, a controversy having arisen as to whether they fulfilled the contract, after some years a second contract for settlement was entered into, by which it was agreed that the dryers should be repaired by plaintiff, and under its direction, so as to render them steam-tight and operative; that on their acceptance by defendant, or on an award by arbitrators, which the contract provided for, finding them to meet such requirements, defendant should pay a certain sum therefor, but, in case the arbitrators should decide that they were not steam-tight and operative, it should pay nothing. *Held*, that the essential fact to entitle plaintiff to recover under such contract was its making the dryers steam-tight and mechanically operative, as therein required, and the provisions for acceptance or arbitration were merely methods for ascertaining whether plaintiff had fulfilled such requirement; hence, in the absence of an acceptance, and on the failure of an award by the arbitrators through the fraud or collusion of defendant, a court might properly proceed to ascertain by the verdict of a jury whether plaintiff had fulfilled the contract, and render judgment accordingly.

2. SAME.

While an acceptance of the dryers by defendant under such contract was suspended by the subsequent selection of arbitrators by the parties, and would have been superseded by an award fairly made, where such an award was prevented by the fraud of defendant plaintiff was restored to its rights under the acceptance, and entitled to recover thereon if proved.

In Error to the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

The action below was on the common counts to recover for the work and labor in the construction and setting in place of three certain dryers in the refinery of plaintiff in error at Waukegan, Illinois.

The assignments of error relate to the instructions of the court to the jury: the refusal to give instructions; the admission and refusal to admit evidence; and the overruling of a motion to instruct the jury to find the issues for the plaintiff in error. The case turns largely upon the construction to be put upon a written contract of settlement between the parties.

The essential facts are as follows:

In 1889 the defendant in error (hereinafter called the Allis Company) agreed with the Rose Malt Works, predecessor of the plaintiff in error (hereinafter called the United States Company) to do the work of constructing three dryers, according to the plans furnished by the Rose Malt Works, and to set the same up in their factory at Waukegan, to be used for the purpose of drying feed and waste material. Each dryer is composed of two drums or cylinders of steel about thirty feet long, one enclosing the other, rigidly connected by jack screws. Steam is turned into the inner drum. The material to be dried is fed into the space between the drums by means of a spout at the upper end of each dryer, and is then carried forward by gravity, and a system of stationary shovels, until discharged at the lower end. The dryer being slowly revolved, the material is dried by passing over the heated surface of the inner drum.

According to the plans furnished by the Rose Malt Works each dryer ran upon trunnions, one at each end and one in the middle, and the power was applied at the periphery of the outer drum.

The dryers were constructed, set in place, and tried, but, being found unsatisfactory, a new contract was made under which they were to be recon-

105 F.—56

structed according to plans prepared by the Allis Company. Under these plans, the dryers were to be supported at the ends, and the power applied at the center of the inner drum, the ends to rest upon piers to be constructed by the United States Company. After such reconstruction, they were again tried but the parties disagreed as to whether the test was satisfactory, or the contract had been properly performed.

Suit was then brought by the Allis Company to recover the contract price. The United States Company resisted on the ground that the dryers were not steam-tight; that there was not sufficient allowance for contraction and expansion; that, by reason of this, the dryers pulled over the piers upon which they rested; and that in their then state it was impossible to make the dryers steam-tight and mechanically operative. The Allis Company claimed that the contract had been fully performed; that the dryers were steam-tight; and that the pulling over of the piers was due to the insufficient construction of the piers themselves, a work that had been done by the United States Company.

The case, involving these issues, went to two trials, the first resulting in a judgment for the Allis Company (which was reversed for reasons not material in this review) and the second resulting in a disagreement of the jury. Thereupon, as a method of settling the controversy the following agreement was entered into:

"In settlement of all differences between the E. P. Allis Company and the United States Sugar Refinery arising out of the construction of three dryers, it is hereby agreed:

"That the United States Sugar Refinery will rebuild the west piers at its own expense, under the supervision and according to the directions of the E. P. Allis Company which last named Company assumes all responsibility for the sufficiency of the piers when so rebuilt and reconstructed.

"That upon the completion of said work the E. P. Allis Company will take said three dryers, place them in position, doing whatever work may be found necessary, either by way of repair or reconstruction, to make them steam-tight and mechanically operative as dryers.

"That upon the completion of said work and the tendering of the same to the United States Sugar Refinery, it is further agreed that if there be any dispute between the parties as to the dryers complying with the above agreement, all differences shall be arbitrated by the selection of one party by the E. P. Allis Company, and one party by the United States Sugar Refinery and if said two parties cannot agree they shall select a third, and both parties to this agreement shall abide by the decision of the majority of said arbitrators.

"Upon the completion of the work in accordance with this agreement, and the acceptance of the same by the United States Sugar Refinery, or upon the decision of said arbitrators as aforesaid in favor of the said E. P. Allis Company, the United States Sugar Refinery is to pay the E. P. Allis Company the sum of Ten Thousand Dollars ($10,000) in full for all claims and demands. If the said E. P. Allis Company fails to complete its contract according to this agreement or according to any additional requirements imposed by said arbitrators, then the United States Sugar Refinery shall pay nothing, and said E. P. Allis Company shall remove the same at their own expense.

"It is further agreed that both sides shall proceed with the execution of this work with all convenient speed.

"It is further understood that all disputes, claims or demands of either party against the other are settled and merged in this agreement, and upon the signing thereof, except as herein contained, each party releases the other of any and all claims.

"It is further understood that within ten days after the dryers have been tendered by the Allis Company to the Sugar Refinery, the latter company shall either accept the same and pay the money as above provided, or appoint an arbitrator and notify the Allis Company thereof in writing, and that the Allis Company within ten days after receiving notice of such appointment shall appoint an arbitrator on its behalf.

"Upon the signing of this agreement by the representatives of both parties,

it is hereby stipulated that all suits pending between the parties shall be dismissed without cost to either side."

A disagreement again arising respecting the performance of this agreement, the action under review was brought. On the trial in the court below testimony was offered by the Allis Company tending to show that, pursuant to this settlement contract, the United States Company had built the foundations, and the Allis Company, in the month of November, 1895, had placed thereon the dryers, repacked the steam boxes, and calked a rivet in the shell of the boiler; that upon two tests then made the dryers were found to be steam-tight and mechanically operative; that the dryers, in the opinion of experts in construction of this class of machinery, were properly constructed, and had adequate power to resist and· endure the strain, both of revolution and steam pressure; and that the dryers had been accepted by the United States Company.

But payment not having been made, the following correspondence ensued:

Allis Company to United States Company, January 6, 1896. "Our Mr. Tucker returned from your place sometime ago and stated that the dryers had been thoroughly tested, and were practically all right and satisfactory to your company. In view of our having complied with the conditions of agreement made in Chicago by which these dryers were to be put in order and tested by us we have to request that you please favor us with check for $10,000, at your earliest convenience. If you can forward same so as to reach us by Saturday of this week, it will be greatly appreciated, as we have some large payments to take care of and are decidedly short of funds."

United States Company to Allis Company, January 10, 1896. "Your favor dated the 6th inst. received here on 8th, saying that your Mr. Tucker stated that 'the dryers had been thoroughly tested and were all right and satisfactory to our company,' is at least anticipating.

"Mr. Tucker was here and had steam on. We certainly hope the dryers may prove to be all right, but we have given no expression on the subject. Had the dryers been ready for test sooner, you and we could have availed ourselves of feed for drying, for a practical steam-tight, and mechanical operation of them for a sufficient time to determine, but the starch works are not grinding just now.

"If you intend to claim your letter of the 6th inst. as tender of dryers under the stipulations (which certainly is premature), do you also claim the ten days provision after tender to call for the naming of arbitrators now?

"The only real test of their being steam-tight and mechanically operative is the result obtained by their use, which obviously necessitates actual service."

United States Company to Allis Company, January 16th, 1896. "In view of the fact that we have received no reply from you to our inquiry of the 10th instant, we beg to advise you of our selecting and naming Mr. Henry Morton as arbitrator in our behalf under stipulation between yourselves, and this company, made in Chicago."

Allis Company to United States Company, January 21, 1896. "Acknowledging receipt of your favor of the 16th inst. notifying us that you have named Mr. Henry Morton as arbitrator on your behalf, under the agreement made between your company and ourselves, have to advise you that we have this day arranged with George H. Benzenberg of this City as arbitrator in our behalf under the same agreement.

"Will you kindly advise us at your earliest convenience as to the address of Mr. Morton that Mr. Benzenberg may communicate with him and arrangements be made for carrying out the agreement under which the Arbitrators have been appointed."

The ensuing correspondence between the arbitrators thus appointed, extending over a period of nearly a year, without the appointment of a third arbitrator tends to show that Morton, arbitrator for the United States Company, refused to come to Waukegan, where the mill was situated; that he refused to accept, as a test, any operation of the dryers, except such as would be involved in their continuous operation under normal conditions, that is, that the works be put in normal operation; that the works, not being then in operation, and not having been since 1891, a period of about five· years, a

suggestion was made that a car-load of corn should be purchased and used for a test, but this was declined by Morton; that there was no assurance that the works would be started up in the near future, or at any time; and that, therefore, the attitude of Morton amounted to an indefinite postponement of the test, and, in consequence, an indefinite postponement of any payments due under the contract. There was testimony, also, tending to show that the attitude thus assumed by Morton was in pursuance of correspondence with the United States Company.

The claim of the Allis Company on the trial was that this testimony showed that the United States Company had, by collusion with Morton, fraudulently defeated the arbitration.

The court, in effect, charged the jury that the Allis Company was entitled to recover, if it was found from the evidence that the dryers had been accepted by the United States Company; and further, should no such acceptance be found to have been made, the Allis Company was entitled to recover, if it was found that the dryers furnished by the Allis Company were in fact steam-tight and mechanically operative, and, a reasonable effort having been made to obtain arbitration and award, they were prevented by the fraud of the United States Company, or its collusion with the arbitrator appointed by it.

The action of the court in overruling the motion to take the case from the jury; in refusing special instructions offered by the United States Company; and in excluding and admitting testimony, is challenged as erroneous, chiefly upon the following propositions:

1. "That the only promise or undertaking contained in the contract in suit made by plaintiff in error was to pay upon the acceptance by it of the dryers in controversy, or upon the decision of the arbitrators in favor of the E. P. Allis Company; and that to recover upon the contract, defendant in error was bound to show either acceptance or award, to satisfy the condition of the undertaking of plaintiff in error.

2. "That even though it be conceded that defendant in error might recover the price, provided by the contract to be paid, upon acceptance or award, the judgment of the court below must be reversed, because it instructed the jury that they might find for the defendant in error in case they found there had been an acceptance prior to the time that arbitrators were appointed by both parties.

3. "That even if it be held that defendant in error might recover under the contract in suit upon either the theory that the plaintiff in error accepted the dryers, or on the theory that plaintiff in error prevented the arbitration, and, therefore, became liable to pay the contract price, the pleadings in the case do not enable defendant in error to recover, except by showing an acceptance by plaintiff in error.

4. "That there is no evidence in the record tending to show that the plaintiff in error hindered or prevented the arbitration."

I. K. Boyesen, for plaintiff in error.

Frank M. Hoyt and Charles Quarles, for defendant in error.

Before WOODS and GROSSCUP, Circuit Judges, and BUNN, District Judge.

After the foregoing statement of the case, GROSSCUP, Circuit Judge, delivered the opinion of the court, as follows:

As we construe the contract, it imposed upon the United States Company the duty of paying the Allis Company the stipulated sum when, by the completion of the work provided for in the agreement, the dryers were made steam-tight and mechanically operative. Acceptance of the dryers by the United States Company, or submission to arbitration, though provided for in the contract, are stipulated methods only of ascertaining the basic fact, namely, whether the

dryers are steam-tight and mechanically operative. The right of the Allis Company to receive, and the obligation of the United States Company to pay, the stipulated price, arises, not from acceptance or arbitration, but from the Allis Company's having performed its contract obligation in respect to the dryers. Nor can this right to receive payment be defeated, or this obligation to pay be evaded, by an unjust refusal of the United States Company to accept the work done, or its fraudulent prevention of an award under arbitration. To so construe the contract would be to put the method above the end, and to make available to the United States Company the power to nullify the contract, by taking advantage of its own wrong. Doubtless the methods provided for in the contract—determinative of whether the contract has been fulfilled—must be primarily followed; but if these methods are prevented or made unavailable by the fraud of the party to be charged, it does not follow that the hands of the courts are tied, so that they may not, as in other cases, proceed to enforce the contract, and do justice between the parties. The case under review is, in this element of prevention of arbitration by fraud, different from Milnes v. Gery, 14 Ves. 400; Scott v. Avery, 5 H. L. Cas. 811; Babbage v. Coulburn, 9 Q. B. Div. 235; President, etc., of Delaware & H. Canal Co. v. Pennsylvania Coal Co., 50 N. Y. 250. In none of these cases is it ruled that a recovery could be permanently prevented, according to the usual method of ascertaining facts and making up a judgment in courts, should the methods devised in the contract be nullified by the fraud of the party to be charged. We are clear in our opinion that, in the absence of acceptance, and the failure of an award, brought about by the fraud of the United States Company, the court below properly proceeded to ascertain, by verdict of the jury, whether the contract had been actually performed, and to give judgment accordingly. This is simply to hold that while parties to a contract, such as the one under review, may rightfully insist upon arbitration, they can not, having obtained it, throw it away, and then insist upon the ensuing vacuum as an unchangeable legal right.

There was sufficient evidence to go to the jury, tending to show acceptance, and also sufficient evidence to show fraudulent prevention of arbitration by the United States Company. All things considered, the weight of the evidence, in our opinon, justifies the verdict returned. We are not satisfied that the court was correct in charging that acceptance alone—without any finding that arbitration was fraudulently prevented—entitled the Allis Company to a verdict. Probably if the question were raised we would hold that the resort to arbitration suspended the rights growing out of acceptance, and, had an award been fairly reached, superseded them; but when the arbitration was brought to naught by the fraud of the United States Company, it is clear that there was an immediate restoration of the parties to the previous status, so that acceptance again becomes determinative, as if no arbitration proceedings had been entered upon. Any other conclusion would give to the United States Company the advantage of its own fraud. On the whole, the possible error of the court referred to is unimportant; and as no exception

was taken at the time to this feature of the charge, and no requests were offered which would have obviated it, we are of the opinion that it is not a ground for reversal.

In view of the construction we have placed upon the contract, there is no ground for the contention that there can be no recovery under the common counts. The gist of the action is the contract price of the dryers. This, of course, is triable under the common counts. Acceptance or award are incidental features only of the contract, and though potent in given cases to defeat a recovery, do not furnish the basis of the action.

The judgment will be affirmed.