STEFANO BERIZZI CO., INC., Respondent, *v.* BELA KRAUSZ, Trading as KRAUSZ CASING COMPANY, Appellant.

First Department, March 7, 1924.

Arbitration — vacating award — award will not be vacated on ground that arbitrator made independent investigation — Civil Practice Act, § 1457, subd. 3, not applicable.

The award of an arbitrator will not be vacated on the ground that he was guilty of misconduct within the meaning of subdivision 3 of section 1457 of the Civil Practice Act, in that he conducted an independent investigation upon his own initiative and based his award on both his personal investigation and the testimony and facts presented.

APPEAL by the defendant, Bela Krausz, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 24th day of April, 1923, granting petitioner's motion for a reargument of its motion to vacate the award of an arbitrator appointed by the court pursuant to an agreement to arbitrate in a contract of sale and vacating the award of said arbitrator.

*Fisher & Deimel* [*David T. Smith* of counsel; *Nicholas A. Heymsfeld* with him on the brief], for the appellant.

*Putney, Twombly & Putney* [*Lemuel Skidmore* of counsel], for the respondent.

FINCH, J.:

The question arbitrated was whether certain bamboo skewers made in China and sold by the respondent to the appellant were merchantable (said skewers having been rejected by the appellant and resold by the respondent). An award was filed in favor of the appellant and confirmed. Subsequently a motion for reargument was granted and the award vacated, upon the ground that the arbitrator had made extensive investigations upon his own initiative and hence precluded cross-examination with respect thereto. Apparently the arbitrator was so anxious to reach a correct result that after the close of the hearings, in addition to considering the testimony submitted at the hearings, he caused to be made an investigation at West Washington Market and other places as to the salability of the skewers, and offered samples of the skewers which were put in evidence on the hearing, to various persons, who tried them out and reported to him as to their condition; he also delivered certain samples to his salesmen, who offered them to customers within and without New York city, and said salesmen reported to the arbitrator that they were unable to get an offer for the skewers; and the arbitrator also personally offered skewers to persons who told him that they were unable to use them. In the affidavit submitted by the arbitrator, he makes the following statement: " It was on the strength of this personal investigation which the arbitrator made in addition to the testimony and facts presented on the actual arbitration before him that deponent's decision was rendered."

When the trial justice held that cross-examination was a vital right inherent in the parties to the controversy, this necessarily included a right in the parties to have all the evidence other than documents made available for the right of cross-examination. This might preclude the submission of affidavits and many other means of information which are now used in arbitrations and which were used in this arbitration without objection. For example, contracts and letters were admitted without authentication, also unauthenticated letters from third parties and reports of an absent witness certifying to the quality of the skewers. In reaching his conclusion the learned justice at Special Term would seem to have overlooked the fundamental difference between an arbitration and a trial. In an arbitration the arbitrator is frequently selected because of the knowledge which he has acquired of facts relating to matters in dispute from sources other than the parties to the controversy. It is obvious that, if the court is to compel the observance of the various rules taken over from the trial of a case, such as the right of cross-examination in connection with all evi-

dence considered by the arbitrator, then it will require much litigation to determine just what rules shall be so observed, and in the end we will have some sort of modified trial.

By chapter 275 of the Laws of 1920 the Legislature enacted as chapter 72 of the Consolidated Laws what is known as the "Arbitration Law," which manifested an unmistakable intention on the part of the Legislature to establish a forum for arbitrations in the place of the submissions to arbitrations, which had theretofore been possible under title 8 of chapter 17 of the Code of Civil Procedure, and around which had grown up many fetters imposed by the courts in a laudable effort to protect the rights of litigants. (*President, etc., D. & H. C. Co.* v. *Pennsylvania Coal Co.*, 50 N. Y. 250; *Fudickar* v. *Guardian Mutual Life Ins. Co.*, 62 id. 392, 399; *United States Asphalt Refining Co.* v. *Trinidad Lake Petroleum Co.*, 222 Fed. Rep. 1006.) The disposition of to-day is to afford the widest possible opportunity for arbitration confined only by those rules imposed by the Legislature. During the progress of the appeal herein and on May 21, 1923, such an arbitration was declared to be a special proceeding. (See Arbitration Law, § 6a, as added by Laws of 1923, chap. 341.) As was said in *Matter of Berkovitz* v. *Arbib & Houlberg* (230 N. Y. 261, 269): " Section 2 of the statute  *  *  *  declares a new public policy  *  *  *." Said section 2 was amended by chapter 14 of the Laws of 1921. The Arbitration Law heretofore referred to made applicable to it such sections of the Code of Civil Procedure, now within article 84 of the Civil Practice Act, " so far as practicable and consistent with this chapter." (Arbitration Law, § 8, as amd. by Laws of 1921, chap. 14.) The Civil Practice Act (§ 1457) provides the cases in which an award may be vacated. They are as follows:

" 1. Where the award was procured by corruption, fraud or other undue means.

" 2. Where there was evident partiality or corruption in the arbitrators or either of them.

" 3. Where the arbitrators were guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

" 4. Where the arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final and definite award upon the subject-matter submitted was not made."

The respondent relies particularly on subdivision 3, " where the arbitrators were guilty  *  *  *  of any other misbehavior by which the rights of any party have been prejudiced," and

strongly urges that when the arbitrator endeavored to make his own investigations in the case at bar, these acts brought his conduct within the condemnation of such subdivision. Since the words used in said subdivision are " guilty of misconduct," it would not seem that they would cover a case such as the one at bar, where there arises no question as to the integrity of the arbitrator. While the respondent's contention might have carried much force when arbitrations were looked at askance, yet since the enactment of the Arbitration Law, it would seem that said section, to be consistent therewith, should be held as intending simply to provide the elementary requirements of honesty, full hearing and impartiality. (*Matter of Wheat Export Co., Inc.*, 185 App. Div. 723; affd., 227 N. Y. 595.) In other words, the clear path would seem to require that the section above quoted, permitting the court to vacate an award, should be strictly construed in favor of the award, leaving it to the Legislature to provide such additional reasons as it may desire to point out for vacating an award. (*Itoh & Co., Ltd.,* v. *Boyer Oil Co., Inc.*, 198 App. Div. 881, 884.) Such a construction makes inapplicable as authorities the earlier cases decided prior to the enactment of the Arbitration Law.

For these reasons the order appealed from should be reversed, with ten dollars costs and disbursements, and the motion denied, with ten dollars costs.

CLARKE, P. J., DOWLING, McAVOY and MARTIN, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.