LEOPOLD SCHEPP, RESPONDENT, *v.* LEWIS E. MANLEY AND THE SAMUEL CRUMP LABEL COMPANY, APPELLANTS.

*Arbitration — when a party may withdraw therefrom — Code of Civil Procedure, sec. 2383 — effect of withdrawal — when equity will not restrain legal actions.*

A controversy having arisen between certain parties relative to goods purchased, they entered into a written agreement which fixed the prices to be paid and received for some of the articles in dispute, and appointed an arbitrator to decide other questions. Before anything had been done before the arbitrator, differences of opinion arose as to what questions it had been intended to submit to the arbitrator, and thereupon some of the parties withdrew from the arbitration.

*Held,* that they had a right thus to withdraw.   (Code of Civil Pro., § 2383.)

That the effect of such withdrawal was to terminate the arbitration and to remit the parties to their rights, as these stood before entering into the agreement of arbitration, except that the agreements contained in such written instrument, not connected with the arbitration, would remain in force.

Before entering into the written agreement actions for damages and for the price of the goods in dispute had been begun by the respective parties, which covered all the questions at issue.

*Held,* that these actions should be tried, thereby determining the matter, and that an action, which was brought by one of the parties to have the written agreement declared binding, and also to restrain the further prosecution of one of the actions already begun, could not be maintained.

Where it appears that no settlement was accomplished by a submission to arbitration, and cross-actions, proceeding upon strictly legal grounds, are pending between the parties, it is not a case where equity can be invoked, on the ground that a compromise should be maintained, nor one where the extent of litigation possible between the parties will be limited to prevent a multiplicity of suits.

APPEAL by the defendants from a judgment, entered in the office of the clerk of the county of New York on the 10th day of January, 1890, after a trial at the New York Special Term.

*J. Hampden Dougherty,* for the appellants.

*Theron G. Strong,* for the respondent.

DANIELS, J. :

The action was brought to secure a judgment declaring an agreement entered into on the 11th of July, 1888, between the plaintiff and the Samuel Crump Label Company, to be valid and binding and a settlement of the controversies between the parties, and to restrain and enjoin the prosecution of an action brought by the defendant Manley as the assignee of the company, against the plaintiff, and to settle the disputes which had arisen between the plaintiff and the company. The plaintiff had previously been engaged in manufacturing and selling desiccated cocoanut and pudding preparations, and the company had manufactured and delivered to him wrappers and labels used upon the packages in which these articles were contained and sold. Early in the year 1887 they entered into an agreement, by which the company was to make and deliver to him 25,000 half-pound and 25,000 pound cocoanut cartons. These articles were to be in the nature of samples of a new manufacture, and if they proved satisfactory an order was to be placed with the company for a much larger quantity of the same or similar articles. The company entered upon the performance of this agreement and order and continued to do that until about the close of the year 1887. On the fourteenth of November of that year a further agreement was made between the parties, by which the company was to manufacture 600,000 one-half pound and 100,000 one-pound pudding cartons

There were to be manilla-lined, coated one side and having a. straw board back. And early in the year 1888 the company began the delivery of these additional articles to the plaintiff, but disagree_ ments arose concerning these and also, as there is some reason for believing from the plaintiff's testimony, as to some of the other cartons made and delivered to the plaintiff. The complaints, however, as to those made under the contract and order of the 14th of November, 1887, were more general and comprehensive, including certainly a very large number of cartons delivered and offered to the plaintiff, he complaining that they were not according to the agreement which had been entered into, and the president of the company insisting that they were manufactured as well as that could be done from the material mentioned in the contract.

The misunderstanding arising out of the objections made by the plaintiff continued until the early part of July, 1888; and on the eleventh of that month these parties entered into an agreement for the adjustment of their differences. By this agreement it was

"Agreed, between Samuel Crump, Pres't, in behalf of Samuel Crump Label Co. and L. Schepp, that the controversy now existing between them regarding cartons for cocoanut and puddings, shall be settled on the following basis, viz. :

"All cartons that have been used by L. Schepp shall be paid for at contract-price, less fifty per cent (*i. e.,* half invoice price). Those that are perfect and those that are not perfect, but can be made so, or like sample, are to be taken at full contract-price.

"It is understood that there is no sample to guide regarding the cocoanut cartons, and the umpire is to judge for himself as to what is a perfect carton. Those which are unmerchantable are to be discarded, *i. e.,* imperfect.

"The expense attending the cartage to corporation yard, and the railroad charges to Canada and Montclair, N. J., are to be equally divided between Samuel Crump Label Co. and L. Schepp.

"Each party is to pay his own legal expenses.

"All labels are to be paid for in full.

"Cash is to be paid by L. Schepp for amount of referee's award when same is made.

"Each and every question mentioned and not mentioned in this agreement is left to Charles F. Conant, if he will serve as referee ;

and if he will not serve we are to agree · upon some other person,. and the terms of the agreement shall be equally binding on us. And it is understood, further, that the referee has no power to make any reconstruction on anything that is provided for in this agreement.

" On the conclusion and settlement of this agreement L. Schepp agrees to withdraw all his claims for business damages.

" L. SCHEPP. [SEAL.]

"SAM'L CRUMP, *Prest.*" [SEAL.]

In the first instance this instrument contains an agreement as to prices to be paid by the plaintiff, and the obligation of the company concerning what should be found to be imperfect cartons. Then it was agreed, after providing for the payment of the expenses of taking a large number of cartons, which had been unloaded upon the sidewalk in front of the plaintiff's store, and which he refused to receive, and for that reason they had been carted by the officials. of the city to the corporation yard, that the labels which had been manufactured prior to making of either of these agreements should be paid for in full, and then that the other questions between the parties, either mentioned or not mentioned in the agreement, were to be left to Charles F. Conant, or some other person in case he declined to act, as referee to settle and adjust. Mr. Conant was willing to act in this capacity. But soon after the agreement was made, differences arose between the parties to it concerning its construction and effect and the extent to which it should be applied. And these differences prevented the submission of the matters referred to in the agreement to Mr. Conant for settlement. And for that reason the president of the company, acting in its behalf, early in the year 1889 revoked the submission of these matters to the arbitrator or referee. Mr. Conant wrote to him inquiring whether it was desired that he should act. And on the 28th of February, 1889, the president replied that they had commenced a suit, and stating that as a reason for not proceeding with the arbitration. And on the fourth of March of the same year, in answer to another letter from Mr. Conant, the same fact was reiterated, as to which the president of the company added : " I suppose I am now relieved from any further action ? " Further correspondence took place between these persons in which the president of the company

stated that they had no other alternative but to consider the agreement at an end on account of the action taken by the plaintiff. And notice of this final conclusion was given by Mr. Conant to the plaintiff on the 18th of March, 1889. This was clearly a revocation of so much of the agreement of the 11th of July, 1888, as that has been permitted by the provisions of the statute, as well as the rule previously sanctioned by the authorities, not brought to the attention of the Special Term. (Code of Civil Pro., § 2383 ; *Frets* v. *Frets*, 1 Cow., 335.) And the effect of it was to terminate and annul so much of the agreement as included and provided for this arbitration. And as the company was vested with the legal right to revoke the submission in this manner, the court had no authority after that to establish or maintain the submission. For it was as much out of existence as though no agreement had been made at any time providing for it. And that necessarily remitted and restored the parties to all their rights against each other, which they had previous to the making of this agreement. .

These rights were the enforcement of the claims made by the plaintiff against the company for the defective manufacture of the cartons, and on the part of the company for the prices agreed to be paid for the cartons made and delivered, in case they conformed to the description of them contained in the agreements. So far as the parties entered into stipulations by the instrument of the eleventh of July, unconnected with the submission to arbitration, they remain unrevoked and require to be construed and applied, in view of the attendant circumstances, the same as other agreements made between parties competent to contract. (*Dodds* v. *Hakes*, 23 N. Y. St. Rep., 193.) And so far as such agreements or stipulations were made a part of the instrument, they undoubtedly will be applicable to the disposition, in future, of the contracts or claims existing between these parties. But these stipulations created no independent right of action in favor of the plaintiff. He had, previous to the making of the agreement, commenced two suits against the company for the recovery of the damages he claimed to have resulted from the cartons being defectively manufactured. And when the submission to the arbitration was revoked he was left at liberty to proceed with either one or both of these actions, the same as though no submission had ever been agreed upon ; and the company, pro-

ceeding upon the same principle, assigned their demands to the defendant Manley, who commenced an action against the plaintiff for their recovery. These actions, and probably one action on the part of each of these parties, will be sufficient to settle the entire dispute arising out of their different positions. The disputes were the proper subjects of actions at law, arising as they did out of no more than claims for damages on the one side and of prices for articles manufactured and delivered on the other side. These were all strictly grounds for legal actions as distinguished from suits in courts of equity. Full and complete relief can readily, by the simplest course of proceeding, be attained through the instrumentality of these suits. And the subjects included in them formed no equitable grounds of action.

It is true that courts of equity may, under certain circumstances, maintain and establish compromises and settlements between parties. But this is not a case of that description. For no settlement was effected by this agreement, but it provided a means through which a settlement or adjustment should be reached, and that was by the consideration and decision of the matters agreed to be submitted to Mr. Conant, which were prevented entirely by the subsequent disagreements of the parties and the revocation of the submission. That has left all the disputes intended and designed to be settled under the agreement as completely unsettled as they were before, except so far as they may be affected by the covenants or stipulations contained in the instrument aside, from those relating to the arbitration. This action, therefore, cannot be maintained for the purpose of establishing a settlement or compromise, for the grounds of complaint and demands of the parties have not been settled by what has taken place. And the legal mode now for securing that settlement is by the actions on the one side for damages and on the other side for the prices of the cartons which have been made and delivered. And a full and complete adjustment and determination of these matters will be made in the actions for damages on the one part, and for the prices of the goods on the other. There is no necessity, nor is there any propriety for prosecuting an action in equity to attain these ends. They are the appropriate subjects of actions at law, and are there required to be prosecuted and determined. Neither is there any ground for maintaining this suit as one to

prevent a multiplicity of actions. For the range and extent of possible litigation between the parties is limited, and, as their affairs at present are made to appear, will not transcend the suits which have already been commenced, and probably will not require the prosecution of more than two of these actions.

The judgment which has been entered in this case has undertaken to go no farther than to sustain the agreement of the eleventh of July, and to restrain the prosecution of the action commenced by Manley as the assignee of the company, and the entry of judgment for want of a complaint in the actions commenced by the plaintiff against the company. It to no extent settles, or has undertaken to settle, either of these disputed matters between these parties. But it has declared in its third subdivision : " That no cause of action exists in favor of either of the defendants, excepting upon compliance with the terms and provisions of said agreement of July 11, 1888."

And that seems to be an erroneous conclusion, for the reason that the company was at liberty under the law to revoke the submission which had been agreed to be made. The case in this respect differs from that of *Delaware, etc., Canal Company* v. *Pennsylvania, etc., Coal Company* (50 N. Y., 250). For, the province of the arbitrator was to settle the disputes existing between the parties, and not to perform a condition precedent to the right of either to maintain an action at law. And the objection, that adequate relief could be obtained by the plaintiff in an action at law, has been taken by the answer in this action.

The judgment should be reversed and a new trial ordered, but it should be without costs to the appellants.

Van Brunt, P. J., and Brady, J., concurred.

Judgment reversed and new trial ordered, without costs to the appellants.