(118 App. Div. 699)

## WYCKOFF v. WOARMS et al.

(Supreme Court, Appellate Division, First Department. April 5, 1907.)

ARBITRATION AND AWARD—AGREEMENTS TO ARBITRATE—OUSTING JURISDICTION OF COURTS.

An agreement, in the event of the parties to a contract for the performance of certain work and the furnishing of certain materials in the construction of the iron metal work for a building failing to agree upon the questions as to whether any work was added or omitted under the terms of the contract, and the fair valuation of such work, if added or omitted, that such disputes should be left to the determination of a third person, whose decision should be final, was not a general arbitration agreement, attempting to oust the courts of jurisdiction, but was an agree-

ment within the rule authorizing the parties to agree that the decision of a third person shall be a condition precedent to a right of action.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 4, Arbitration and Award, §§ 29, 30.]

Patterson, P. J., and Houghton, J., dissenting in part.

Appeal from Judgment on Report of Referee.

Action by Abram Wyckoff against Albert M. Woarms and another. From a judgment for plaintiff, defendants appeal. Modified and affirmed.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, HOUGHTON, and LAMBERT, JJ.

Frederick Hulse, for appellants.
Franklin Nevius, for respondent.

LAMBERT, J.   John W. Ferguson had a contract for the construction of a building for the Hamilton Trust Company, of Paterson, N. J. Plans for the same were made by one H. G. Stephens, architect.   The firm of D. S. Hess & Co., these defendants, were subcontractors under Ferguson.   The plaintiff, doing business as the Empire Brass & Metal Works, entered into a contract with the defendants on July 31, 1902, for the performance of certain work and the furnishing of certain materials in the construction of the metal work of iron, polished and electro-plated, for the said Hamilton Trust Company's building.   By the terms of the original contract this work was to have been completed on the 25th day of October, 1902.   This provision was waived by mutual consent November 11, 1902, and the contract was modified by making a change in the materials to be used at an additional cost to the defendants of $3,000, which brought the contract up to $10,750.   This modified contract fixed no date for the completion of the work.   The original contract, after stipulating that the subcontractor (the plaintiff) should "well and sufficiently perform and finish in a thorough and workmanlike manner   *   *   *   all metal work of iron," etc., "under the direction and to the satisfaction of the general contractors [these defendants] and H. G. Stephens, architect,   *   *   *   agreeably to the drawings and specifications made by the said architect," provided in the third clause that:

"Should any alteration be required in the work shown or described in the drawings or specifications, a fair and reasonable valuation of the work added or omitted shall be made by the general contractors, and the sum hereinafter agreed to be paid for the work according to the original specifications shall be increased or diminished as the case may be."

It was further provided that:

"In case such valuation is not agreed to, the subcontractor shall proceed with the alteration upon the written order of the general contractors, and the valuation of the work added or omitted shall be referred to three (3) arbitrators,   *   *   *   the decision of any two of whom shall be final and binding, and each of the parties hereto shall pay one-half of the expense of such reference."

It is clear that under the provisions of this clause the plaintiff could do no extra work for which he could make a charge, except upon the written directions of the defendants.   In case the defendants gave such

directions and the extra work was done, then, if the parties could not agree upon the reasonable value of the same, the arbitrators were to fix the same, and their decision should be binding. The arbitrators are not given any authority to determine the question of what was "work added or omitted." That was left to the parties themselves. The only question which could be submitted to arbitration under the third clause of the contract was the valuation of the work added or omitted. This appears to be the construction placed upon the contract by the parties. Disputes at once arose as to whether or not certain work required by the defendants was within the requirements of the contract; the defendants insisting it was, and the plaintiff disputing it and demanding written instructions as a basis for a claim for extra work. The result was that the work was delayed until Mr. Ferguson, the original general contractor, demanded to know of the plaintiff why the work was not progressing. He was informed of the state of disputation of the parties. He suggested that all matters in dispute be submitted to him for arbitration. As a result, February 25, 1903, the plaintiff wrote the defendant, saying:

"It is perfectly agreeable to us to leave all questions as to the interpretation of the plans and specifications to Mr. John W. Ferguson for his decision. This refers only to matters which have not been decided up to that date. It is also agreed that Mr. Ferguson's decision shall be final. If this is your understanding of the matter, kindly send us your acceptance of same, and we will proceed with all drawings or instructions which are given us in writing affecting the work on the Hamilton Trust Company in Paterson, N. J., without raising any question, no matter whether it is according to contract or not."

On the 27th day of February, two days later, the defendants wrote to the plaintiff:

"We are agreeable to leaving undecided questions in relation to the above work to the decision of Mr. John W. Ferguson, but do not desire that work be proceeded with upon this building which might be construed as additional work without a written notice to that effect from you."

On the 28th day of February the plaintiff acquiesced in the suggestion that the extra work for which a claim was to be made should be stated in writing to the defendants, at the same time enumerating the items for which he would ask Mr. Ferguson to award "an extra," which embraced "the iron work which goes above the frames which we made for the revolving doors," "register facings," and "the trouble and expense we have been put to, owing to the fault of some one in setting those revolving windows, without authority from us." It was declared in this communication that "this covers all the points which have not been settled between ourselves"; the defendants being requested, if there was any of this work to be stopped, to notify the plaintiff at once.

The practical result accomplished here is, not a waiver of the provisions of the third clause of the contract, but a modification of the contract, to make it a workable agreement. The parties could not agree as to what constituted the alterations provided for in that clause, and to obviate this difficulty they agreed between themselves that Mr. Ferguson should determine the construction to be placed upon the provisions. He was to determine whether the work was called for under the contract, or whether it was extra; and while this, under the exact lan-

guage of the writings, is all that is provided for, the parties appear to have acted upon the theory that the arbitration was to extend to a determination of the value of the extra work performed. In other words, the third clause of the contract was, by mutual agreement, modified so as to provide that in the event of the parties failing to agree upon the question of whether the work was within the contract, and the fair valuation of such work where it was extra, the decision of Mr. Ferguson should be final, provided that the plaintiff should, before undertaking any such extra work, notify the defendants in writing of his intention of claiming extra for the same. The rights of the parties upon this appeal must therefore depend upon what has been done under the contract as modified. After this modification it was no longer necessary that the plaintiff should have a written authorization to do extra work. He was complying with his contract when he went forward with the work as laid out in the plans and specifications, provided he notified the defendants in advance of his intention to claim as extra any work which he construed to be such. The defendants undertook to pay him for such extra work, when found to be extra by Mr. Ferguson, at a fair valuation, such fair valuation to be likewise determined by the arbitrator agreed upon. The plaintiff's right to recover in this action for extra work must depend, therefore, on whether he has complied with these conditions, or established by proof a legal excuse for his failure to do so.

The principal item for extras for which the plaintiff recovered before the referee, and upon this appeal seeks to sustain, was set forth in the eighth cause of action of the complaint. After alleging the formalities of performance, the complaint continues:

"That upon the completion of the contract, as hereinbefore set forth, plaintiff submitted the question as to the valuation of such additional work to John W. Ferguson. That the said John W. Ferguson refused to pass upon said item, without passing upon all items in dispute directly between the plaintiff and the said John W. Ferguson. That the plaintiff notified the defendants of the action of the said Ferguson, and that he would not be bound thereby. That thereafter the plaintiff offered to refer to three arbitrators, as provided in said contract, the question of the kind, character, and valuation of such additional work. That thereupon defendants refused to refer to three arbitrators, as provided in said contract, the questions of the kind, character, and valuation of such additional work."

The pleader then alleges reasonable valuation, and asks for judgment for the amount. The answer puts these matters in issue. We examine the record in vain for any evidence to show that John W. Ferguson refused to pass upon the matters submitted to him by the plaintiff, except upon condition that he should pass upon other matters pending between himself and the plaintiff. It is true that the plaintiff in his letter refuses to go on with the arbitration, and alleges that the arbitrator refused to consider matters, except in connection with others in which he was interested; but this is not evidence of that fact. It clearly appears from the record that the only matters before Mr. Ferguson were such as the plaintiff voluntarily placed before him. There is no evidence which warrants the conclusion that Mr. Ferguson sought or undertook to pass upon any item or question which plaintiff did not voluntarily place before him. The evidence clearly discloses that the plaintiff knew neither more nor less of Mr. Ferguson at the

time of the submission of his questions than he did at the time the contract was modified, and so far as we can discover there was no reason for his withdrawing from the arbitration. If there were good reasons why Mr. Ferguson was not a proper person to act, it was the duty of the plaintiff, under his contract, not to repudiate the arbitration absolutely, but to point out the disqualifying circumstances and seek to have a different person chosen.' But the plaintiff alleges that he did something of the kind; that he "offered to refer to three arbitrators, as provided in said contract, the question of the kind, character, and valuation of such additional work," and that the defendants refused so to refer. It is true that the plaintiff did, November 14, 1903, at the time of repudiating the arbitration under his modified contract, ask the defendants to name their man under the provisions of clause 3 of the original contract; and again, November 23d, there was a demand to have such arbitrator named by return mail, and, unless this demand was complied with by November 25th, the plaintiff would "assume that you do not care to go on with the arbitration provided for by clause 3 of our agreement, and will at once apply to the courts for proper relief." Replying to this letter, the defendants on the 25th of November say:

"While we do not see any obligation on our part to enter into any arbitration other than we have already agreed to, we are disposed to have the controversy between us settled as speedily and with as little inconvenience as possible to all concerned."

Then followed a proposition to "arbitrate all questions between us, provided that the plaintiff would agree that the decision shall be final and binding and that judgment may be entered upon the decision." Thereupon the plaintiff wrote to the defendants that:

"We do not see any reason for us now to deviate from the terms of the contract between us of July 31, 1902. That contract was good enough for us then, and is good enough for us now. On the basis of the terms of that contract we proceeded with our work, and on that basis we stand to-day. Clause 3 of that contract is specific, and in pursuance of that clause we request you now, for the last time, to-day, to name us your representative for the arbitration provided for by that clause of the contract."

On the 3d day of December the plaintiff seems to have repented of this, and offers to arbitrate as suggested by the defendants; but nothing was ever done about it, and the plaintiff testified that he thought he had indicated that he would not act under this last letter. If we assume that the plaintiff had a right to repudiate this arbitration before Mr. Ferguson, and that the result of this repudiation would be to restore the original contract, it must be apparent that the offer of arbitration made by the plaintiff was not that provided for in clause 3 of such contract. That clause provided merely for arbitrators to determine the reasonable value of the work added or omitted, and not the determination of whether or not there was added or omitted work. That was to be evidenced by the written authority of the defendants. The plaintiff's theory seems to be that he could have a modification of the contract, waiving the written authorization by the defendants, and at the same time have the benefit of the provisions for arbitrators to determine the valuation of the work which he claimed was extra. But this clearly never was within the contemplation of the

parties, and it never became any part of the contract between them. The defendants continued in their original work, and in the event of a disagreement they stipulated that upon their written order plaintiff might do the work which should be regarded as extra, and that the valuation of such work should be fixed by the arbitrators. There was no provision for any general arbitration—merely the value of the work which had been added or omitted from the drawings and specifications, which became a part of the contract; and the plaintiff could not recover under this contract for extra work, except by showing that it had been authorized in writing. The plaintiff could not enlarge this provision of the original contract by a modification of it, and then arbitrarily repudiate the results of such modification. He cannot "blow hot and cold" at the same time. He must stand upon his original contract, and show compliance with its terms and conditions, or he must stand by his modified agreement, and show that he has performed under that. There is no pretense that the plaintiff has the written authorization for most of the extra work for which he is now claiming. It is clear that he is not permitted to recover for extras under his original contract, without producing written authority of the defendants to proceed with the work. There is no claim, and there cannot be, under the evidence in the case, that he had or has such written authority. It is equally clear that he could not have the advantage of a waiver of any of these provisions without complying with the conditions of the modified contract. He was relieved of the burden of securing a determination whether the work was within the contract, or of having a written authorization for such work, upon the condition that he would submit the question of the construction of the contract, and of the reasonable value of the work added or omitted, to Mr. Ferguson; and having refused, without fault on the part of the defendants, to submit to such arbitration as he had agreed upon as a condition of the modification of the original contract, he is not entitled to recover for such extras.

The suggestion that the defendants lost any rights by failing to protest when the plaintiff notified them that he refused to be bound by the arbitration of Mr. Ferguson is begging the question. They had agreed to submit to this arbitration. They had modified their contract in this respect. They had done no wrong. Their liability depended upon the plaintiff securing the award of the arbitrator; and, if he chose to repudiate the contract, it was no part of their duty to protest against it. But, as a matter of fact, they did offer to submit the whole question to three arbitrators, conditioned only that judgment might be entered upon the decision; and this the plaintiff refused, preferring to stand, as he said, upon the terms of the original contract. It now appears that with those terms he did not comply. There is no reason to suppose that the defendants would not, if they had known of any misconduct on the part of Mr. Ferguson, have agreed to the substitution of some other person, if such suggestion had been made to them by the plaintiff; and as the duty and obligation of satisfying conditions precedent was upon the plaintiff, and he made no effort to comply with the letter or spirit of his modified contract, but asserted his right to go back to the original contract, he has only himself to

blame if he is denied the benefits of the judgment in his favor, in so far as it relates to the eighth cause of action. The record shows conclusively that he has neither complied with the conditions of the original contract, nor with those of the contract as modified by the Ferguson arbitration provision. It is equally clear that the evidence fails to disclose any misconduct on the part of the arbitrator, or any disposition on the part of the defendants to prevent a just and equitable adjustment of the questions in the manner pointed out by the contract. On the contrary, the defendants appear to have been willing to continue the arbitration as agreed upon, or to submit the questions in dispute to the arbitration board, provided, only, that judgment might be entered upon its decision.

In this situation it is by the plaintiff suggested, on the authority of Seward v. City of Rochester, 109 N. Y. 164, 16 N. E. 348, that the determination of Mr. Ferguson as arbitrator was not a necessary condition precedent to the right of the plaintiff to recover. The proposition is that the agreement to arbitrate was such as to oust the courts of jurisdiction, and that it was void as against public policy. There can be no doubt of the rule that where parties undertake, by independent covenant or agreement, to provide for an adjustment and settlement of all disputes and differences by arbitration, to the exclusion of the courts, such agreement is void and does not stand in the way of recovery. The case cited is authority for that proposition. In the case at bar, however, there is no general agreement for the adjustment of controversies. There is a mere provision that the arbitrator shall determine whether work is added or omitted under the contract, and the value of such work. When these questions have been determined, the courts have full authority to adjust the rights of the parties, and under such circumstances the jurisdiction of this state will be searched in vain, we believe, for a case holding that such an agreement is void. In the Seward Case, supra, the plaintiff entered into a written agreement with the water commissioners of the city of Rochester granting to them the right to lay iron pipes for the conveyance of water across his land, with the right to enter upon same for the purpose of making repairs. The city covenanted to pay him "a fair and just compensation for any damage" that might accrue "by the breaking, bursting, or leakage of said water pipes, or any of them, or from any other cause." It was then agreed, as far as these possible and prospective damages were concerned, that, if the parties could not agree upon the amount of damages, these should "be appraised and fixed by two disinterested persons, one to be selected by each party, and, in case they could not agree, by an umpire to be selected by them, and the award of two of the three thus selected," it was declared, "should be final and conclusive." The discussion of the learned court points out clearly the objections to this clause—that it is a general provision, not confined to the rights created by the contract, but covering all possible injuries flowing from the construction and maintenance of the pipes of every kind and class, and quotes with approval the discussion of the court in Delaware & Hudson Canal Co. v. Penn. Coal Co., 50 N. Y. 250, as follows:

"In one class it is said the parties undertake by an independent covenant or agreement to provide for an adjustment and settlement of all disputes and

differences by arbitration, to the exclusion of the courts; and in the other they merely, by the same agreement which creates the liability and gives the right, qualify the right, by providing that before a right of action shall accrue certain facts shall be determined or amounts or values ascertained, and this is made a condition precedent, either in terms or by necessary implication. * * * The agreement here belongs to the first class. It submits all controversies which may arise in the future out of the grant made to arbitration, totally irrespective of the question whether the rights sought to be vindicated shall prove to be the creation of the contract or have an independent existence under the law as administered by the courts," etc.

The case at bar as clearly falls within the second class as the Seward Case, supra, fell within the first class. Here the only questions agreed to be submitted arise directly under the contract. The first is whether there is work added or omitted, as appears from the drawings and specifications; and the second is the reasonable valuation of such work added or omitted. The determination of these questions is clearly a condition precedent to any right of recovery on the part of the plaintiff under the modified contract, and the conditions named in the third clause are of a like nature, if the plaintiff elects to stand upon his original contract. In the case of Sweet v. Morrison, 116 N. Y. 19, 22 N. E. 276, 15 Am. St. Rep. 376, the agreement was far more general and inclusive in its character, and the court not only approved the contract, but held that the award of the engineer, who was the arbitrator, could not be corrected upon the trial, although error might be shown. See O'Brien v. Mayor of New York, 139 N. Y. 543, 35 N. E. 323; Byron v. Low, 109 N. Y. 291, 16 N. E. 45; Hamilton v. Liverpool Ins. Co., 136 U. S. 242, 10 Sup. Ct. 945, 34 L. Ed. 419.

In the case last above cited the court reiterates the rule that:

"Where parties, in their contract, fix upon a certain mode by which the amount to be paid shall be ascertained, as in the present case, the party that seeks an enforcement of the agreement must show that he has done everything on his part which could be done to carry it into effect. He cannot compel the payment of the amount claimed unless he shall procure the kind of evidence required by the contract or show that by time or accident he is unable to do so." Spink v. Co-operative Ins. Co., 25 App. Div. 484, 49 N. Y. Supp. 730.

The provision under consideration in National Contracting Co. v. Hudson River W. P. Co., 170 N. Y. 439, 63 N. E. 450, was certainly far more open to objection that it tended to oust the courts of jurisdiction than the contract here under consideration, yet the court on demurrer refused to sustain the contention that it was void; and we believe the uniform authority of this country is in harmony with the views expressed.

If we are correct in these conclusions, it follows that the eighth cause of action must fail. The plaintiff fails to show an award on the part of the arbitrator agreed upon, or any justification in law for a failure to produce such evidence, and the written notice of claim by the plaintiff does not meet the requirements of the third clause of the original agreement that the work should be undertaken only upon the written authorization of the defendants. The Court of Appeals in Langley v. Rouss, 185 N. Y. 201, 77 N. E. 1168, has recently laid down the wholesome doctrine that:

103 N.Y.S.—42

A "provision that the builder is not to execute any extra work, or make any modifications or alterations in the work mentioned in the specifications and plans, unless ordered in writing by the engineer in charge, or claim payment for the same unless such written order be produced, is valid, and should be enforced."

In the case at bar there were to be no extras, unless by agreement between the parties or upon the written authorization of the defendants, subject to an arbitration as to the value of the work; and this court is not at liberty to permit a recovery where the conditions mutually agreed upon have not been complied with.

We are equally clear that there is no valid foundation for the cause of action No. 7. There was no time limit in the modified contract. No notice was given at any time by the plaintiff that he would hold the defendants responsible for damages resulting from delay because of their failure to perform. This was prerequisite to a right of recovery for damages resulting from such a cause as is here claimed. In fact, the record does not disclose that the defendants were in default under the contract at any time, and that they are liable for delays such as are shown by the record.

The findings of the referee in respect to causes of action Nos. 1, 2, 3, 4, 5, and 6 may be said to be supported (though meager in instances) in the testimony, and the judgment to that extent should not be disturbed.

The judgment should therefore be modified, by deducting $3,569.04 therefrom as of the date of entry, and, as so modified, affirmed, without costs.

INGRAHAM and LAUGHLIN, JJ., concur.

PATTERSON, P. J. I concur in the reduction of the judgment recovered in this action by the sum of $576, which the referee has allowed for damage suffered by the plaintiff on account of extra superintendence of work, which it is asserted was required in consequence of delay in the work caused by acts of the defendants. I am of the opinion that the evidence did not justify the referee in allowing that amount as an item of recovery by the plaintiff.

I am compelled, however, to dissent from the further reduction of the judgment by the sum of $2,993.04, which amount was allowed by the referee for extra work as claimed by the plaintiff. While it is true that, by the terms of the contract between the parties, written orders were required to authorize the performance of extra work, yet the evidence shows, satisfactorily to my mind, that such requirement was waived. That the work was performed, and that the defendants received and accepted it, is indisputable. During its progress the defendants agreed to submit the construction of the contract to arbitration. Pending that arbitration, it was disclosed that Mr. Ferguson, one of the arbitrators, was personally interested in the determination of the question; for this work was evidently such as would either come within a contract to be performed by him or within the plaintiff's contract, and the latter with good reason objected to going on with the proceeding before one who was virtually an adverse party to him. It was not incumbent upon the

plaintiff, after refusing to proceed before a board of arbitrators of which Ferguson was a member, to suggest a new arbitrator. While it appears that efforts were made to constitute another board of arbitration, which efforts failed, there was no absolute legal obligation on the plaintiff's part to submit his claim to another arbitrator or other arbitrators. The referee has found, and upon abundant evidence, that the whole amount of $2,993.04 was actually for extra work, and I am of the opinion that the plaintiff is justly entitled to recover that amount.

The judgment should be modified by deducting therefrom the amount of $576, and, as thus modified, affirmed, without costs in this court.

HOUGHTON, J., concurs.