PASQUALE PEPE, Plaintiff, *v.* THE MISSANELLESE SOCIETY OF MUTUAL AID, OF UTICA, N. Y., and Others, Defendants.

Supreme Court, Oneida County, December 23, 1930.

*W. J. B. Williams*, for the plaintiff.

*R. R. Calli*, for the defendants.

Dowling, J. In January, 1904, several gentlemen from Missanello, Italy, domiciled in Utica, founded an unincorporated association, known as the Missanellese Society of Mutual Aid, of Utica, N. Y.

On the 7th of January, 1905, the society was incorporated under the laws of the State of New York, having its principal and only place of business in Utica. It adopted by-laws for the transaction of its business. Article 2 of chapter 1 of the by-laws provides: *" The object of this association is to help members in case of sickness, both by pecuniary and personal assistance; to bury decently the dead members of this association; to assist the member who, either by sickness or accident, is unable to live by the products of his work."*

Articles 1, 2 and 4 of chapter 2 of the by-laws provide as follows: *" Whoever, born in Missanello, or married to a native of said city, wishes to become a member of this Society, must be proposed by a Member to the Board of Directors, by a written application, signed by him, containing his name and surname, his age, where he was born and his present address, his trade or profession, and also his father's name. If required he must give all necessary references through which information may be obtained as to his general character.*

*"Art. 2. He must not be under 16 or over 50 years of age, and present a medical certificate as required by the Society, and pay the tax of admission, which is intended to be as follows:*

" From 16 to 20 years of age.......................... $3 00
From 20 to 25 years of age....................... 3 50
From 25 to 30 years of age....................... 4 00
From 30 to 40 years of age....................... 5 00
From 40 to 45 years of age....................... 6 00
From 45 to 50 years of age....................... 10 00

" *He must also pay $1.50 as funeral tax in advance.*

" *These amounts will be refunded to the applicant in case he should not be admitted.*

"*Art. 4. The Secretary, on the appointment of a new member will notify him in writing and send him the certificate proving his membership in the Society, and inform him that he shall give his oath at the next meeting.*"

A written certificate of membership is issued to every newly-elected member.

Chapter 3 of the by-laws provides as follows: "*Art. 1. The duties which the members assume towards the Society are moral, financial and material.*

"*Art. 2. The moral duties are:*

" *(a) To defend the honor and reputation of all the other members, and to support the social institution in its integrity, using legal and proper means, without indulging in deeds forbidden by law and good breeding.*

" *(c) Respect at the meetings the officers in charge of the Society.*

" *(d) To frequent the meetings instituted for the social welfare.*

" *(e) To conduct his life in a manner above reproach, as is the duty of every good citizen.*

" *(f) To maintain the prestige of the Society under all circumstances.*

"*Art. 3. The financial and material duties are:*

" *(a) To purchase a copy of these statutes and the Society's insignia.*

" *(b) To pay regularly the monthly dues and such other assessments as may be approved at the meetings for the welfare of the Society.*"

Article 1, page 4, of the by-laws provides as follows: " *The affairs of this institution will be administered and conducted by a directing board, consisting of: 1 President; 1 Vice President; 1 Corresponding Secretary; 1 Financial Secretary; 1 Treasurer; 4 Counsellors; 2 Supervisors of Accounts.*"

Articles 1, 5 and 6 of chapter 5 of the by-laws provide as follows: " *The monthly dues to be paid by each member is fixed at fifty cents; but this amount may be increased or diminished by a resolution of the assembly of the Society.*

"*Article 5. Any member in good standing who should happen to be injured so that he cannot work and attend to his daily occupation, will*

be entitled to benefits. Such benefits start from the first day of incapacity, in case of accident, and from the third day in case of illness. Such time is always counted from the date when the sick or injured member notifies the doctor and the Sanitary Committee, the days before such notification being not counted at all.

"Article 6. The benefit will consist of the sum of $6.00 (Six Dollars) per week, if the illness does not last over six months; if at the expiration of such six months the member still remains disabled and incapacitated, he may be paid the sum of $3.00 (Three Dollars) per week during six more months. No member shall be eligible to receive the weekly benefit hereby permitted for a longer period than one year, but should the illness or incapacity still last after one year, the member will be exonerated from paying his dues and all assessments whatever until his complete recovery. The sick member who, having been sick during six months, and having received the sick benefits during such period, recovers from his illness, and then gets ill again with the same sickness during the next two months, will be entitled only to $3.00 (Three Dollars) weekly sick benefit; should he, however, become ill with some other illness, he will receive regularly $6.00 per week."

Article 5 of chapter 6 of the by-laws provides for a funeral benefit for every deceased member.

Chapter 7, under the heading "Disciplinary Measures and Punishments," provides as follows: "The Society has established the following penalties applicable indiscriminately to all of its members:

"Art. 1. Any member who has ceased to be a member of this Society and can be proved to have insulted it with unbefitting words cannot be re-admitted again.

"Art. 2. All those who have defrauded or attempted to defraud the Society, will be punished according to the decision of the Board. If a member comes to the meetings in a drunken state, or disturb the order thereof, he will be punished as per Art. 18, Chapter V.

"Art. 3. Any member who communicates to a stranger what is going on in the Society, and that can be proved, will be punished according to the decision of the Board, who, however, must inform the assembly of the facts in the case."

Articles 14 and 18 of chapter 5 of the by-laws provide as follows:

"Art. 14. If a member gets into evil ways and is convicted of a crime, such as felony, theft, murder, perjury, etc., for which he is sentenced to the Penitentiary, or State Prison, he will be erased from the list of members."

"Art. 18. Any member coming to the meeting in a drunken state, or attending a parade in such a condition will be admonished by the President for the first time; the second time he will be fined $5.00; the third time the fine shall be $10.00, and the fourth time, he will be expelled from the Society."

About the year 1926 plaintiff was elected to membership in said society. Five or six months later plaintiff was elected corresponding secretary of said society, and continued as a member of said society, and as corresponding secretary thereof, until the 27th of May, 1930, when he was expelled from membership by a vote of the directing board, composed of the president, vice-president, corresponding secretary, financial secretary, treasurer, four counsellors and two supervisors of accounts.

The charges upon which plaintiff was tried, convicted and expelled grew out of the following incidents: At a regular meeting of the society, held on April 6, 1930, which plaintiff attended in the capacity of recording secretary, some controversy arose about the conduct of a dance committee, which had been appointed by the society in the previous March to conduct a dance for the membership. Plaintiff claims Senatro Paladino, a past president and a member of the defendant society, called him a thief; that he, as recording secretary, entered the statement of Paladino in the regular minutes of the meeting; that at the next regular meeting of the society, May 4, 1930, he read the minutes of the April sixth meeting, including the said charge of Paladino; that the minutes, as read, were approved and signed by the president of the society and by plaintiff as secretary; that on May 10, 1930, plaintiff instituted an action in slander against Senatro Paladino to recover damages for having charged him with being a thief. The institution of this action apparently aroused considerable feeling among the adherents in the society of the respective litigants. The proceedings and the minutes of the meeting of the defendant society were in the Italian language.

Prior to the commencement of said slander action plaintiff had delivered the minute book to Mr. Adolph Capacelatro, a nonmember of said association, for the purpose of having him translate into English the minutes of the meeting of April 6, 1930, which said Capacelatro did. The delivery of the minute book to Mr. Capacelatro was a violation of the provisions of chapter 7 of the by-laws, being article 3, under heading " Disciplinary Measures and Punishments."

The directing board, having learned of this infraction of the by-laws by the plaintiff, called a meeting for the evening of May 23, 1930, and requested the plaintiff to be present at such meeting. Plaintiff attended the meeting as requested. He was confronted by the president with two charges, to wit: (a) That he had delivered the book of minutes to Mr. Capacelatro, a non-member, and (b) that he had falsified the minutes of the meeting of April 6, 1930, by including therein the statement that Senatro Paladino had

called him a thief. Plaintiff admitted the first charge and denied the second. The directing board informed the plaintiff that the matter would be brought before the "Assembly of Members," and that he would be dealt with according to the decision of the directing board.

Timely notice of an extraordinary meeting of the society to be held May 27, 1930, was mailed to the entire membership thereof.

On May twenty-seventh the extraordinary meeting of the society convened, with a goodly quorum present, including the plaintiff. The meeting was opened by the president, who undertook to explain the purpose of the meeting. He was interrupted by several members who desired to speak. He informed them that they were out of order and could not speak until the conclusion of his remarks. These members withdrew from the meeting, followed by the plaintiff. Before the plaintiff left the meeting the president urged him to remain and defend himself against the charges which had been served upon him and which were about to be tried before the directing board on that occasion. He declined to do so.

The president explained the charges fully to the meeting and the meeting unanimously authorized the directing board to hear and adjudicate said charges. The meeting of the directing board was convened in the presence of said extraordinary meeting. The charges were read to the board, their validity was proven and the board, by unanimous vote, imposed the punishment of expulsion upon the plaintiff. On May thirtieth the defendant society notified the plaintiff, in writing, of the fact of his expulsion.

Following receipt of said notice and on June 13, 1930, plaintiff instituted this action against the members of the governing board, who had expelled him from membership in the society, for a judgment restraining them from interfering with his rights and directing them to forthwith restore him to membership in the society and to his office of corresponding secretary.

Upon the trial, by consent of all parties, including the said society, it was brought in and made a defendant herein, and the summons and pleadings were amended accordingly.

Plaintiff contends that he was illegally expelled from membership in said society for the following reasons: (1) That the object of the extraordinary meeting of May twenty-seventh was not contained in the notice of said meeting; (2) that no written charges were ever preferred by the society, or any board or member thereof against the plaintiff, and no written charges were ever served upon plaintiff; (3) that the defendants, in expelling plaintiff from membership in the society, exceeded their powers; that, at the most, if found guilty, plaintiff could only be punished by something less than expulsion from membership.

It is true that the notice of the extraordinary meeting did not recite the object thereof. Plaintiff attended said meeting, raised no question in that regard, nor did anybody else make such an objection; hence, plaintiff must be deemed to have waived that defect.

The evidence is to the effect that the president of the society prepared and caused to be served upon the plaintiff, personally, on the 24th of May, 1930, the following written charges:

"Missanellese Society for Mutual Help,
"Utica, N. Y.
"May 24, 1930.

"Mr. Pasquale Pepe,
"Jay St., Utica, N. Y.

"Brother: You are notified that by a decision of the Executive Council under date of May 23rd, 1930, you are accused of the following.

"1st. Because you brought the books of the Missanellese Society to Adolph Capacelatro without being so authorized.

"2nd. For having falsely written in the minutes of the meeting of April 6th, 1930, that Brother Senatro Paladino called you a thief.

"3rd. For not having read correctly in the meeting of May 4, 1930, what you wrongly wrote in the minutes of the meeting held April 6, 1930.

"This letter, therefore, notifies you to be present at a meeting on May 27th, 1930, at 7:30 p. m. because the Administrative Council must hear your accusations and decide about them. Please come and defend yourself.            Best regards,
"ROCCO PUGLIO,
"President."

and that, in bringing the plaintiff to trial, defendants complied with all of the requirements of the by-laws.

The third ground, namely, that the directing board was without authority to expel plaintiff from membership, presents a very serious question. The by-laws specify only two instances where expulsion is the penalty, namely: (a) If a member is convicted of felony, theft, murder or perjury, and is sentenced to the penitentiary or State's prison, and (b) being in a "drunken state" at a meeting or parade of the association four times. All other punishments are to be administered according to the decision of the board. It is apparent from the context of the by-laws that expulsion is the extreme penalty which can be inflicted upon a member and, then, only in the two instances above specified, and that something less than expulsion is to be the punishment for all other infractions of the by-laws.

Chapter 6 of the by-laws provides for " Disciplinary Measures and Punishments " and leaves the nature and extent thereof to the discretion of the directing board. The word " disciplinary " modifies both *measures* and *punishments*. It is manifest that, if a member is expelled, he can no longer be disciplined or punished by the association. The death penalty, for example, involves more than a punishment; it is a forfeiture of life itself. The word " punishment " ordinarily implies (and we must give it its ordinary meaning) some punishment of a temporary character, something less than a total deprivation of one's rights to life or property. In the instant case the punishment is to be of a disciplinary character. In order that the society may inflict a disciplinary punishment it must have jurisdiction of the recipient thereof, which it would not possess were the recalcitrant member expelled.

The rule *expressio unius est exclusio alterius*, a maxim meaning " the expression of one thing is the exclusion of another," applies here. Since the by-laws specify only two instances where the penalty of expulsion may be imposed, it must necessarily follow that expulsion cannot be imposed for any other infraction of the by-laws. (25 R. C. L. § 229, p. 981; Suth. Stat. Const. § 350, p. 439; 19 Cyc. 23; Broom's Legal Maxims [17th ed.], p. 650; 25 C. J. p. 1151; *President, etc., D. & H. Canal Co.* v. *Pa. Coal Co.*, 50 N. Y. 250, 260; *Smith* v. *Brooklyn Savings Bank*, 101 id. 58, 62.) Since the express mention of the two instances wherein a member may be expelled implies the exclusion of that penalty as to all other infractions of the by-laws, it follows necessarily that the directing board was without authority to impose upon the plaintiff the penalty of expulsion. Plaintiff had certain property rights and interests in the society, which were valuable to him. Expulsion from an organization is a serious matter and leaves a blot upon a person's record that cannot easily be effaced. In drafting the by-laws the drafters had in mind, no doubt, the aim of the society, printed on page 6 of the by-laws, to wit: " Man is not born to live in neglect and solitude, but he must seek the Society of his fellow men * * * the individual who remains neglected and forlorn will sooner or later incur all the tribulations of life, without assistance from anyone and remain weakened and broken by the turns of the wheel of fortune," and they determined to deprive no member of the fellowship and protection of the society, except in the event of conviction and imprisonment for crime, or being drunk at a meeting or parade on four occasions. For all other violations the society apparently was satisfied to inflict upon the violator some disciplinary punishment.

To allow the sentence of expulsion imposed upon plaintiff to

stand would violate the plain intent and object of the society, and would impose upon him a penalty and punishment not countenanced by the by-laws and would work an irreparable injury by depriving plaintiff of his vested rights in the benefits which said society affords its members.

The evidence is clear that the plaintiff deserved to be disciplined by the infliction of some temporary punishment, in the nature of suspension from meetings for a time, the imposition of a reasonable fine, or an apology before the membership of the society in special meeting. He had no right to exhibit the books to Mr. Capacelatro or to include in the minutes any remark which might reflect upon his personal integrity. It was his duty to record in the minutes only matters pertaining to the business of the society.

Plaintiff is entitled to judgment directing the defendants to reinstate him to membership in said society upon payment of all back dues. Under the particular circumstances, no costs are allowed.

Motions for dismissal of the complaint are denied, with exceptions to the defendants.

Findings and judgment accordingly.